8131 ·

### STATE *EX REL.* LYON, ATTORNEY GENERAL, v. COLUMBIA WATER POWER CO.

1. CONCURRENT RESOLUTION.—CONSENT DECREE relating to the opening of the Columbia Canal for navigation made on the consent of the Attorney General under instruction from the General Assembly by Concurrent Resolution reopened on the ground that a Concurrent Resolution cannot have the effect of repealing a statutory provision, and because one attorney consented thereto under a misapprehension of the attitude of one of the parties.

2. COLUMBIA CANAL—COUNTY BOARD OF COMMISSIONERS.—Under section 1409 of Code of 1902, the county commissioners of Richland county

may be required to furnish an attendant on the locks of the Columbia Canal for use in navigating the canal.

3. IBID.—The Columbia Street Railway, Light and Power Company, as successors to the trustees of the Columbia Canal, are required by the statute relating thereto to keep and maintain at the Broad River end of the canal workable locks to admit navigation.

Motion in the original jurisdiction of the Court.

*Mr. Attorney General Lyon* and *Mr. B. P. McMaster*, for the motion. *Mr. McMaster* cites: *Courts of equity have jurisdiction to enjoin public nuisances:* 1 Spelling on Ex. Rem. 318, 2 High on Inj., sec. 1554; Joyce on Nui., sec. 416; 1 Ency. 64; 69 Am. Dec. 187; 42 A. R. 182; 18 Ves. 217; 19 Id. 617; 28 Kan. 735; 1 N. C. 12; 22 Ala. 190; 30 Ga. 506; 87 Ill. 453; 11 Abbott's N. Cas. 313; 26 Ia. 379; 117 Ga. 434; 83 Pac. 598; 53 S. E. 603; 122 Ga. 754; 5 L. R. A. 193; 30 Am. Dec. 103; 39 So. 520; 18 Ky. 800; 148 Ill. 51; 66 Col. 150; 18 Ark. 258; 147 Cal. 381; 59 Am. St. R. 750; 87 Ala. 659; 108 Mass. 463. *Attorney General may maintain this action:* Code 1902, 641; 146 U. S. 458; 67 Fed. R. 291; 22 S. C. 83; 78 S. C. 286; Joyce on Nui. 437; 2 Pom. Eq., secs. 564, 542, 523; 5 Id. 479; 4 Id. 1349; 2 Lous. 396; 66 Col. 152; 148 Mass. 309; 91 Ga. 220; 10 Ill. 366; 16 Mass. 242; 1 Spelling on Ex. Rem. 318; Bispham's Prin. of Eq., sec. 439. *Navigable waters shall forever remain public highways:* Art. 1, secs. 28, 40, Con.; XIV, sec. 1; XVI, sec. 1; Code 1902, sec. 1335; 6 Stat. 91, 187, 214, 363, 567, 304; 12 Stat. 293; 14 Stat. 83; 16 Stat. 360, 444; 19 Stat. 1090; 20 Stat. 967; 67 Fed. 291; 42 S. C. 138; 22 S. C. 59; 60 S. C. 566; 1 McC. 404, 582; Cheves 259; Rice 450; 2 Strob. 1, 12; 10 Stat. 300; 12 Stat. 268, 474, 923; 13 Stat. 288, 439; 16 Stat. 840; Gen. Stat. 1062; Code 1902, 1335; 22 S. C. 50; Gould 107-10; 42 S. C. 155; 108 Mass. 439; 46 S. C. 327; 76 S. C. 366. *A public corporation cannot divest itself of its public obligation:* 28 S. C.

401; 75 S. C. 162.  *Municipal corporation may be enjoined from committing an illegal act:* 72 S. C. 96.

*Mr. Christie Benet,* for City of Columbia.

*Mr. B. L. Abney,* for Columbia Street Railway, Light and Power Company.

March 11, 1912.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  The nature and scope of this proceeding is set out with sufficient fullness in the opinion rendered on March 4, 1909, and reported in 82 S. C. 181, 63 S. E. 884.  By the decree then rendered the Court adjudged that the Columbia Canal was navigable water, and that its obstruction by a bridge used to support the water pipes of the city of Columbia was a public nuisance against which the State was entitled to an injunction.  In view of the alleged difficulties in conducting the city's supply of water without the use of the bridge, the Court made the following order of reference: "It is, therefore, referred to A. D. McFadden, Esq., master for Richland county, to take testimony and report his conclusions of fact on these issues: Would an order enjoining at once the construction of the bridge described in the petition so seriously interfere with the water supply of the city of Columbia as to endanger the health of the city?  In issuing the order of injunction for the protection of the free navigation of the canal, what length of time should be allowed the city of Columbia to provide another method of conveying an adequate supply of water to the waterworks of the city?"

The report of the master having been afterwards filed, the Court on March 5, 1910, ordered "that the respondent, the City of Columbia, and the mayor and aldermen of the city of Columbia, and each of them, are hereby enjoined

and required to remove within eight months from the date
of this order, the water mains and bridge constructed across
the Columbia Canal by the city of Columbia, and located
near the city water pumping station, a fuller description
of said bridge and water mains appearing in the petition."
85 S. C. 113, 68 S. E. 1118.

Thereafter the General Assembly passed the following
concurrent resolution: "A concurrent resolution provid-
ing for an extension of time for the city of Columbia to
comply with the order in the case of *State* v. *City of
Columbia.*

"*Whereas,* The Supreme Court of South Carolina has
passed an order requiring the city of Columbia to remove
from across the Columbia Canal the water mains and
bridge there erected by it on 5th June, 1911; and,

"*Whereas,* The removal of said bridge and mains will
be at great expense and the whole water supply of the city
of Columbia is dependant thereon; and,

"*Whereas,* The said city does not question the right of
the State to require it to remove the said bridge and mains
at any time it sees fit to do so, but it is desirous of being
allowed to let the bridge and mains remain until such time
as it is shown that they are an actual obstruction to real
navigation; and,

"*Whereas,* It appears that even if the city of Columbia
now remove the said bridge and mains, there are other
obstructions in the said canal which would prevent navi-
gation, and against which no proceedings have been taken
by the State of South Carolina or other parties; therefore,

Section 1. "*Be it resolved* by the House of Representa-
tives, the Senate concurring, That the Attorney General be,
and he is hereby, authorized and directed to consent to an
order of the Supreme Court of the State of South Caro-
lina extending the time for the removal of said bridge and
mains 'for a period of five years from the date hereof unless

all other present obstructions to navigation on said canal be sooner removed.'"

On the written consent of the Attorney General and other counsel the Court, on 5th May, 1911, made an administrative order, that "the time allowed for the removal of said water pipes and bridge is hereby extended to 15th February, 1916, unless prior to said date the present obstructions to navigation at the locks be removed; then upon notice of such removal, said respondent shall, within eight months, remove the said bridge and water mains as directed in the original decree herein, filed 10th March, 1910."

After this order was made Mr. B. P. McMaster, who as counsel had main charge of the case on behalf of the State under the sanction of the Attorney General, filed his petition for a revocation of the order on the ground that he "was induced to consent to said order, with such a contingency, upon the understanding and belief based upon the statement of the attorney of the respondent, the Columbia Electric Street Railway, Light and Power Company, and its former manager, who stated to petitioner that the respondent recognized that it was its duty to keep said gates in workable condition, and at any time, it would put its gates in such condition for the passage of boats in and out of said canal." On this petition an order was made requiring the respondents to show cause why the consent order above recited "should not be reconsidered, and such time for the removal of said obstructions be fixed by the Court as should be meet and just, and the respondent, the Columbia Electric Street Railway, Light and Power Company, do show cause, at the same time and place, why said order in this cause should not be reconsidered and said cause reopened for further enforcement of the rights of the public, and why it should not be required to put its locks at the head of said canal in a workable condition."

Separate returns were made by the respondents, and the issues arising thereunder are now before the Court.

It is not necessary to consider in detail the affidavits as to the conversations between Mr. McMaster and the officers of the Street Railway Company which formed the basis of the understanding alleged by Mr. McMaster. Assuming that the officers of the Street Railway Company did not intend to recognize its duty to keep the gates of the locks in workable condition, nor to promise to put them in such condition, it cannot be doubted that the consent was signed under that impression. No expense has been incurred, and in no respect has either of the respondents been placed in a worse condition by reason of anything done under the order. Under these circumstances, refusal to open the order would be oppressive. The objection made in the return of the city of Columbia that the Attorney General has not joined in the request that the consent order be opened was made no doubt because the Attorney General was absent from the State when the return was filed, and his position had not been ascertained by the city attorney. The record shows that the Attorney General is actively applying to have the consent order opened by joining in the printed argument submitted in support of the petition.

In considering whether the consent order should be revoked and the matter reconsidered it is necessary however to determine the force of the concurrent resolution, because the resolution not only authorized, but directed the Attorney General to consent to an order extending the time for the removal of the bridge and water mains "for a period of five years from the date hereof unless all other obstructions to navigation upon said canal be sooner removed."

As was shown in the former decree the canal is navigable water of the State and as such, under the Constitution, must forever remain a public highway free to the

citizens of the State and the United States, without tax, impost, or toll imposed. The extent to which this constitutional provision limits the power of the General Assembly to enact laws imposing burdens on navigation or authorizing the obstruction of navigable waters for public purposes presents a question of difficulty. The subject has been discussed, and language like that used in our Constitution has been construed in several cases decided by the Supreme Court of the United States. In *Caldwell* v. *American Bridge Co.,* 113 U. S. 205, 28 L. ed. 959, the Court said with respect to a similar provision in the statute admitting the State of California: "If we treat the clause as divisible into two divisions, they must be construed together as having but one object, namely, to insure a highway equally open to all without preference to any, and unobstructed by duties or tolls, and thus prevent the use of navigable streams by private parties to the exclusion of the public, and the exaction of any toll for their navigation; and that the clause contemplated no other restriction upon the power of the State in authorizing the construction of bridges over them, whether such construction would promote the convenience of the public." *Hamilton* v. *Vicksburg, etc., Ry. Co.,* 119 U. S. 280, 30 L. ed. 393; *Williamette I. B. Co.* v. *Hatch,* 125 U. S. 1, 31 L. ed. 629; *Manigault* v. *Springs,* 199 U. S. 479, 50 L. ed. 278; *Illinois Central Ry. Co.* v. *The People,* 146 U. S. 387, 37 L. ed. 1018.

But if the power of the General Assembly to authorize the obstruction of navigable water by a municipality be assumed the assumption could not prevent the Court from opening and reconsidering the order in question, for this reason: The General Assembly itself by the statutes referred to in the former decree required the canal to be opened for navigation, and it is obvious that a mere concurrent resolution could not have the effect of amending the statutes or modifying their force by requiring the Attorney Gen-

eral to consent that the canal be obstructed contrary to the statute, so that the Court would be bound by that consent.

But the Court in passing its orders must give great weight to the fact convincingly shown by the return of the City of Columbia that the removal of the bridge by it over the canal without material interference with the water supply of the city and its inhabitants involves an engineering problem of great difficulty, and the Court has no hesitation in modifying its administration orders heretofore granted by extending the time for the removal of the bridge until the expiration of eight months from the filing of this decree.

The remaining question is whether the Columbia Street Railway Company should be required to put the locks in workable condition so that they may be used for navigation. The original petition alleged on this subject: "That your petitioner is informed and believes that the respondents, The Columbia Water Power Company, and The Columbia Electric Street Railway, Light and Power Company, in violation of their obligations to the public, have further obstructed said canal by placing timber, and logs and permitting the same to be and remain at and across the entrance of the lock at the head of said canal; and have fastened and secured the gate of said locks so that the same cannot be opened; and have allowed mud, driftwood and debris to accumulate in said locks so that the said gates have become immovable and useless so as to prevent the passage of boats and other crafts into and out of said canal. * * *

"That in closing the gates of the said locks as aforesaid and in failing to keep the passageway into said canal open for the use of the public, and in the violation of the said acts as hereinbefore set forth, the said respondents, The Columbia Water Power Company and The Columbia Electric Street Railway, Light and Power Company, has violated the duties and obligations assumed by them upon the

purchase of said canal; and said canal being a public high-way, the aforesaid obstructions, constitute a public nuisance, for the abatement of which your petitioner has no adequate remedy at law."

To this allegation the Columbia Street Railway Company responded in part as follows: "That the gates to the lock at the head of the canal on Broad River are not, and as respondent is informed and believes, have never been fastened or secured so that the same cannot be opened, although since the construction of the said lock a movable cofferdam has been placed in the lock above the upper gate for the purpose of cleaning away the mud, sand and trash accumulated there, but said cofferdam can easily be removed in a very short time. That upon removal of the mud and trash accumulated in the upper part of said lock the gates to the lock can be easily and readily opened, but mud, sand and trash will accumulate in a short period of time, perhaps after each freshet in the river, especially when the gates are not regularly opened. That within the past two years one of the gates to said lock has been repaired and made new, so that the boats can pass through said locks whenever occasion requires. That while timber and logs have been placed into a boom and fastened some distance above the lock for the purpose of preventing trash, logs, etc., from washing against and injuring the lock and floodgates to the canal, the same does not interfere with the use of said lock, nor navigation through it. But within the past fourteen years no boat has been used on the canal for the purpose of transporting any freight, merchandise, or commercial commodity, nor has any such boat been put through the said lock."

The Court in its former decree decided nothing on this subject, except that it would not in the exercise of its discretion order the Columbia Street Railway to remove the obstructions to the use of the locks until the General Assembly should make provision for the attendance upon

them. The following language of the decree shows that the matter was left open for further administrative orders upon a showing that provision had been made by law for attendance on the locks: "The Court cannot order the respondent to put the lock in order, because section 15 of the act of 1887, by virtue of which the State's interest in the canal was transferred to the trustees of the Columbia Canal, expressly provided that the trustees should not be required to attend on any locks that may be built, and the Columbia Electric Street Railway, Light and Power Company assumed only the obligations imposed by that act. Assuming, but not deciding, that the Columbia Street Railway, Light and Power Company is bound under its contract to keep the lock free from obstruction to navigation, it is manifest the lock would be of no use without some one to operate it. Until the State may see fit to provide such operation, it would be useless to require the lock to be cleared of obstruction. We do not consider the allegation made in the returns that the use of the lock for navigation of the canal from Broad River would greatly impair the value of large manufacturing and public service works run by the water of the canal. It is to be assumed that the General Assembly, when it provides for attendance and use of the lock, will have due regard for the interests involved in the operation of these plants."

Counsel for the petitioner, at the last hearing, has brought to the attention of the Court section 1409 of the Civil Code as a statute requiring the county board of commissioners to provide for attendance on the locks at the canal. The section provides: "The county board of commissioners are authorized and empowered to keep the said water courses and cuts in repair, and to dig out, clear, cleanse, shorten, straighten and make navigable the same, either with the labor of such male inhabitants as shall be liable to work on the public highways, or by contract with one or more persons; and they shall also have all such work

done as may from time to time be expedient and necessary for the preservation and use of said watercourses and cuts, notwithstanding such work be not designated in this chapter." We think the statute broad enough to meet the case, and that in view of this statute, the Court cannot exercise discretion to withhold an order for the locks to be put in order for operation, on the ground that no provision has been made for attendance upon them.

It remains to decide the question of substantive right expressly left open in the former decree; namely, does the statute law of the State, under which the Columbia Street Railway has charge of the canal, require that corporation to maintain and keep open locks for the purposes of navigation at the entrance from Broad River to the canal? The statute of 1887 (19 Stat. 1090) authorized and required the board of directors of the South Carolina Penitentiary "to transfer, assign, and release to the board of trustees of the Columbia Canal * * * the property known as the Columbia Canal, together with the lands now held therewith * * * for the use and benefit of the city of Columbia, for the purposes hereinafter mentioned in this act, subject nevertheless, to the performance of the conditions and limitations herein prescribed on the part of the said board of trustees and their assigns." The Columbia Street Railway Company is the assignee of the board of trustees of the Columbia Canal, and as such assumed all the obligations imposed on that board by the statute. One of the conditions and limitations to which all rights acquired by the Columbia Street Railway is subject and which was expressly imposed upon it by the act is laid down in section 5 of the statute, namely, "that the said canal shall be opened for navigation free of charges by the said board of trustees." This, of course, did not mean that the canal should be opened and then closed, but that it should be opened and kept open for navigation. It is undisputed that locks are absolutely necessary to the

use of the canal for any purposes of navigation from the Broad River into the canal, and certainly such navigation was contemplated by the statutes. It is impossible to doubt, therefore, that the statute imposed on the Street Railway Company the duty of providing locks and keeping them in condition for use, for not otherwise could the canal be made open for navigation. That this was understood by the parties holding the canal under the act of 1887 to be their duty appears from the fact that they provided for navigation by the construction of locks.

We are not unmindful that there are great interests involved in the use for manufacturing purposes of the power generated by the canal. These interests must be regarded as far as may be consistent with the proper use of the canal as navigable water; for the right of the citizen to the use of the navigable water of the State is not a boundless right. Like other rights it is to be exercised with due regard to other interests,—in this instance with particular concern for the use of the water power which the course of legislation with respect to the canal shows the General Assembly intended to promote. When the Columbia Electric Street Railway, Light and Power Company has performed the duty it voluntarily assumed by putting the locks in workable order, and navigation from the river into the canal has actually begun, it will be time enough to consider what, if any, limitation may be and should be put by the Court upon the use of the canal for navigation, and what other orders, if any, may be necessary to have the canal opened to navigation.

There is nothing before the Court warranting the inference that the canal may not be of some use for navigation through the locks to the bridge, even before its removal; but a reasonable time should nevertheless be allowed for placing the locks in workable condition.

In consonance with the views herein expressed, it is therefore ordered: That the City of Columbia be allowed

eight months from the filing of this decree for the removal of its bridge over the Columbia Canal; that the Columbia Street Railway, Light and Power Company within three months from the filing of this decree open the Columbia Canal by putting the locks in workable condition at the Broad River entrance to the canal; that any and all of the parties have leave to apply for such further orders as may be necessary to protect their rights as herein declared, as questions with respect thereto may hereafter arise under the pleadings.

*Only* MESSRS. CHIEF JUSTICE GARY *and* MR. JUSTICE HYDRICK *participate in this opinion and concur.*