## COLUMBIA RAILWAY, GAS & ELECTRIC COMPANY *v.* STATE OF SOUTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 297. Argued January 26, 1923.—Decided February 19, 1923.

1. Article I, § 10 of the Constitution affords no protection against impairment of the obligation of a contract by judicial decision. P. 244.
2. But where a state court, though placing its decision upon the construction of a contract, in substance and effect gives force to a statute complained of as impairing the contract obligation, jurisdiction of this Court attaches. P. 245.
3. A clause in a grant will be construed as a covenant, if reasonably possible, rather than as a condition subsequent. P. 248.

4. The fact that a legislative grant upon valuable consideration was made to attain a particular end, cannot in itself debase the estate granted.   P. 249.
5. The fact that such a grant makes express provision for forfeiture in case of default in one of the obligations imposed on the grantee, is a strong reason against construing other obligations, not so fortified, as conditions subsequent.   P. 250.
6. A state statute which seeks to convert a covenant in a prior legislative contract into a condition subsequent and to impose as a penalty for its violation the forfeiture of valuable property, impairs the obligation of the contract and is void.   P. 251.

112 S. Car. 528, reversed.

ERROR to a judgment of the Supreme Court of South Carolina affirming a judgment for the State in a suit to enforce a forfeiture of a grant and recover possession of the property, for breach of an alleged condition subsequent.

*Mr. William Elliott* and *Mr. Jo-Berry S. Lyles,* with whom *Mr. R. B. Herbert* and *Mr. W. C. McLain* were on the briefs, for plaintiff in error.

*Mr. S. M. Wolfe,* Attorney General of the State of South Carolina, and *Mr. J. Fraser Lyon* for defendant in error.

There was no irrepealable contract in this case within the meaning of Art. I, § 10, of the Constitution of the United States.

We are not now dealing with ordinary lands subject to sale, nor with proprietary rights of the State, but with navigable waters and the soil thereunder, held in trust by the State for all of the people, wherein an inalienable duty and obligation is due all of the people in their sovereign capacity.

This trust cannot be relinquished by a transfer of the property, and the control of the State, for the purposes of a trust, can never be lost.   The State can no more abdicate its trust over the property in which the whole

people are interested, like navigable waters and the soils under them, so as to leave them entirely under the use and control of private parties, than it can abdicate its police powers in the administration of government and the preservation of peace.

The canal is a governmental subject, and there can be no contract and no irrepealable law on the subject.

The Act of 1887 and conveyances thereunder was merely a license and defendant a governmental agency charged with effectuating a governmental purpose, to wit, improvement of navigation, and the State, in consideration of public policy, has determined, its agent having refused to act, that the work and property shall not be further entrusted to defendant licensee.

The State might have repealed the Acts of 1887 and 1890 and it would have been valid and effective for the purpose of restoring the State to the same control, dominion, and ownership of the property that it had prior to the passage of the Act of December 24, 1887. *State* v. *Columbia Water Power Co.,* 82 S. Car. 181; Const., S. Car., 1868, Art. I, § 40; Art. VI, § 1; Const., S. Car., 1895, Art. I, § 28; Art. XIV, § 1; *Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 388; *People* v. *Kirk,* 53 Amer. St. Rep. 294; 27 R. C. L., Waters, § 236, p. 1327; *Long Sault Development Co.* v. *Kennedy,* 212 N. Y. 1.

There were conditions subsequent in the Acts of 1887 and 1890 and the conveyances thereunder, the violation of which would work a forfeiture.

The Supreme Court of South Carolina has construed this contract in the light of the history of all the legislation pertinent thereto and such acts as necessarily form a part thereof and has held the contract to embody a "condition subsequent," the default in the performance of which would work a forfeiture. The State of South Carolina takes the position, therefore, that by this construction the Supreme Court of the United States, in reviewing

this case on appeal, is bound. *Chicago & Northwestern Ry. Co.* v. *Nye Schneider Fowler Co.,* 260 U. S. 35; *Truax* v. *Corrigan,* 257 U. S. 312; *Clement National Bank* v. *Vermont,* 231 U. S. 120; *Aberdeen Bank* v. *Chehalis,* 166 U. S. 440.

But if this Court should not find that it is bound by the decision of the Supreme Court of South Carolina that there was a condition subsequent in the contract, then we submit, where an act is fairly susceptible of either of two constructions, that one must be adopted which is most favorable to the State. Only that which is granted in clear and explicit terms passes by a grant of property, franchise, or privilege in which the Government or the public are at interest. *Cooshaw Mining Co.* v. *South Carolina,* 144 U. S. 550; *Blair* v. *Chicago,* 201 U. S. 400; *United States* v. *Michigan,* 190 U. S. 379.

The question that is to be determined is, What is the proper construction of the language used in the Acts of 1887 and 1890?—whether they constitute a condition subsequent, the violation of which would cause a reversion of the property to the original grantor, the State of South Carolina? This construction must be made in the light of the history of the canal as appearing upon our statute books and the public resolutions of the General Assembly of South Carolina prior to it, as well as the decisions of the Supreme Court of South Carolina.

A study or examination of these acts and decisions will convince the Court that in the entire history of Columbia Canal project the legislature never gave any intimation of any abandonment of its obligation to maintain the canal from the time it was constructed, about 1822 or 1823, up to the present, but evidenced its purpose that the use of this canal should be maintained for the public for the purposes for which it was originally built.

Our contention is that there is but one intention which appears from the whole act and which controls the legis-

lature, and the proviso in the first section of the act was merely to postpone a reversion for seven years which would have otherwise occurred in two years under the provisions of § 7. This is a concession and limitation upon the intention of the legislature that the canal should be completed as soon as practicable. Citations of authority that a court of equity will never declare a forfeiture when the parties cannot be put *in statu quo* cannot be applicable to the Acts of 1887 and 1890.

The Act of 1917 was not given force and effect as a legislative adjudication of forfeiture. It was not offered, admitted, or relied upon as evidence to prove plaintiff's case. The contract was not impaired and defendant was not deprived of due process of law thereby.

The case was not removable. The complaint sets up no right, title, or interest given or arising under any statute or constitutional provision of the United States. The only right asserted is based upon the statute of the State.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This was an action brought by the State against the defendant (plaintiff in error) to recover possession of a certain canal property, known as the Columbia Canal, on the ground that the defendant had forfeited the same by reason of its failure to fulfill certain conditions subsequent upon which its continued title depended. Prior to the year 1887 a small canal, following the course of the one now in question, was owned by the State, the title being vested in the Board of Directors of the state penitentiary. In 1887 the legislature passed an act incorporating the Board of Canal Trustees, to whom the penitentiary directors were required to and did transfer the canal. Acts S. Car. 1887, p. 1090.

By § 1 of this act, the title to the canal was vested in the trustees for the use and benefit of the City of Co-

lumbia, subject to the performance of certain obligations therein set forth, and to the proviso, " that should the said canal not be completed to Gervais street within seven years from the passage of this Act all the rights, powers and privileges guaranteed by this Act shall cease, and the said property shall revert to the State." [1]

By § 3 they were authorized to construct a dam across Broad River and raise the water in the river so as to get a fall of 37 feet at the south side of Gervais Street, provided that the canal be so enlarged as to carry a body of water 150 feet wide at the top, 110 feet wide at the bottom and 10 feet deep and " develop at least 10,000 horse power at the south side of Gervais street."

By § 5 the canal was to be opened for navigation free of charge.

By § 7 the trustees were required to complete the canal within two years so as to carry a body of water of the di-

---

[1] " Section 1. That the Board of Directors of the South Carolina Penitentiary are hereby authorized, empowered and required to transfer, assign and release to the Board of Trustees of the Columbia Canal, hereinafter created and provided for the property known as the Columbia Canal, together with the lands now held therewith, acquired under the acts of the General Assembly of this State with reference thereto or otherwise, all and singular the rights, members and appurtenances thereto belonging; and upon such transfer, assignment and release all the right, title and interest of the State of South Carolina in and to the said Columbia Canal and the lands now held therewith, from its source at Bull's Sluice through its whole length to the point where it empties into the Congaree River, together with all the appurtenances thereunto belonging, shall vest in the said Board of Trustees for the use and benefit of the city of Columbia, for the purposes hereinafter in this Act mentioned, subject, nevertheless, to the performance of the conditions and limitations herein prescribed on the part of the said Board of Trustees and their assigns: *Provided,* That should the said canal not be completed to Gervais street within seven years from the passage of this Act all the rights, powers and privileges guaranteed by this Act shall cease, and the said property shall revert to the State."

mensions stated from the source of the canal down to Gervais Street and to furnish free of charge 500 horsepower to the State, 500 horsepower to Sullivan Fenner and 500 horsepower to the City of Columbia, and "as soon as is practicable, complete the canal down to the Congaree River a few yards above the mouth of Rocky Branch." [1]

By a subsequent act, passed in 1890, the trustees were authorized to "sell, alienate and transfer" the property subject "to all the duties and liabilities imposed thereby [that is by the Act of 1887], and subject to all contracts, liabilities and obligations made and entered into by said board. . . ." Acts S. Car. 1890, p. 967. Under this statute the canal was sold to defendant's predecessor, whose title the defendant now has.

The case turns upon the provision contained in § 7, requiring the trustees, as soon as practicable, to complete the canal down to the Congaree River, and depends upon whether this is a condition subsequent, the failure to perform which incurs a forfeiture, or is a covenant the breach of which gives rise to another form of remedy.

---

[1] "Sec. 7. That the Board of Trustees shall, within two years from the ratification of this Act, complete the said canal so as to carry a body of water 150 feet wide at the top, 110 feet wide at the bottom and ten feet deep, from the source of the canal down to Gervais street, and to furnish to the State, free of charge, on the line of the canal, 500 horse power of water power, to Sullivan Fenner or assigns 500 horse power of water power, under his contract with the Canal Commission, and to furnish the city of Columbia 500 horse power of water power at any point between the source of the canal and Gervais street the city may select; and shall, as soon as is practicable, complete the canal down to the Congaree River a few yards above the mouth of Rocky Branch: *Provided*, That the right of the State to the free use of the said 500 horse power shall be absolute, and any mortgage, assignment or other transfer of the said canal by the said Board of Trustees or their assigns shall always be subject to this right."

That the provision has not been complied with is not disputed.

The legislature, in 1917, passed an act, Acts S. Car. 1917, p. 348, which begins with a preamble reciting certain of the provisions of the Act of 1887, including that relating to the completion of the canal down to the Congaree River, and declaring that there had been a failure to fulfill the conditions imposed by that act. By § 1 it is then enacted that these conditions have not been complied with but have been disregarded, by reason whereof the right, title and interest, " transferred by virtue of said Acts, have been forfeited and reverted to the State." By § 2 the Attorney General, and other officers named, are directed, within ninety days, to make such reëntry for the State as might be necessary and proper under the circumstances and to take such steps as might be lawful and proper to obtain possession and control of the property and improvements placed thereon, unless satisfactory arrangements be made by the claimants of the canal. By § 3 the Attorney General is directed, at the time of reëntry or thereafter, to commence such proceedings as might be proper in any of the courts of the State to assert the right of the State to said property and improvements.

In pursuance of the act last referred to this action was brought in a state court of common pleas. The complaint alleged that the defendant had failed to complete the canal as soon as practicable down to the Congaree River, and had failed to comply with the provisions of the Act of 1887 in other particulars. The other alleged violations may be dismissed from consideration, since the judgment of the trial court is based alone upon the one just specified, and its judgment is affirmed by the State Supreme Court without reference to the others.

That the legislation of 1887 and 1890, and the transactions based thereon, establish a contract between the

State and the defendant is clear. The remaining inquiries are: (1) What is the pertinent obligation of this contract and (2) has that obligation been impaired, in violation of Article I, § 10, of the Constitution?

We are met at the threshold with a challenge on the part of the State to our jurisdiction, and this must first be considered. The judgment of the state court, it is asserted, was based upon its own construction of the contract and not at all upon the Act of 1917.

As this Court has repeatedly ruled, the Constitution affords no protection as against an impairment by judicial decision. *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18, 30; *Louisiana Ry. & Nav. Co.* v. *New Orleans*, 235 U. S. 164, 170, and cases cited.

If, therefore, the judgment, although in effect impairing the obligation of the contract, nevertheless proceeds upon reasons apart from and without giving effect to the statute, this Court is without jurisdiction to review it. *Bacon* v. *Texas*, 163 U. S. 207, 216, wherein the doctrine is stated as follows:

" Where the Federal question upon which the jurisdiction of this court is based grows out of an alleged impairment of the obligation of a contract, it is now definitely settled that the contract can only be impaired within the meaning of this clause in the Constitution, and so as to give this court jurisdiction on writ of error to a state court, by some subsequent statute of the State which has been upheld or effect given it by the state court. *Lehigh Water Co.* v. *Easton*, 121 U. S. 388; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 109. . . . If the judgment of the state court gives no effect to the subsequent law of the State, and the state court decides the case upon grounds independent of that law, a case is not made for review by this court upon any ground of the impairment of a contract,"

But, although the state court may have construed the contract and placed its decision distinctly upon its own construction, if it appear, upon examination, that in real substance and effect, force has been given to the statute complained of our jurisdiction attaches. In *Houston & Texas Central R. R. Co.* v. *Texas,* 177 U. S. 66, 77, this Court said:

" Thus we see that, although the decision of the state court was based upon the ground that the warrants in which these payments were made had been issued in utter violation of the state constitution, and were hence void, and that no payments made with such warrants had any validity, and although this ground of invalidity was arrived at without any reference made to the act of 1870, yet the necessary consequence of the judgment was that effect was thereby given to that act, and in a manner which the company has always claimed to be illegal and unwarranted by the act when properly construed. The company has never accepted such a construction, but on the contrary has always opposed it, and raises the question in this proceeding at the very outset. Upon these facts this court has jurisdiction, and it is its duty to determine for itself the existence, construction and validity of the alleged contract, and also to determine whether, as construed by this court, it has been impaired by any subsequent state legislation to which effect has been given by the court below. *Bridge Proprietors* v. *Hoboken Company,* 1 Wall. 116; *University* v. *People,* 99 U. S. 309; *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131; *New Orleans Water Works Company* v. *Louisiana Sugar Refining Company,* 125 U. S. 18; *Central Land Company* v. *Laidley,* 159 U. S. 103, 109; *Bacon* v. *Texas,* 163 U. S. 207, 216; *McCullough* v. *Virginia,* 172 U. S. 102."

The record before us in the present case plainly discloses that the basis for bringing the action against the defendant was the Act of 1917. The complaint alleges at

considerable length the provisions of the Act of 1887 and the various transactions resulting in the acquisition of the property by the defendant and its consequent assumption of the obligations contained in that statute. The provisions of the Act of 1917, as heretofore recited, are then set forth, followed by a statement of certain negotiations had with the defendant, and it is then alleged that the Attorney General and the other officers mentioned, not considering it appropriate and proper to commit a breach of the peace by making forcible entry upon the property and taking possession thereof, have, therefore, by virtue of § 3 of said act instituted this action.

The sufficiency of the complaint was challenged by demurrer, upon the ground, among others, that the contract in question was impaired by the Act of 1917. The demurrer having been overruled, an answer was filed, alleging such impairment and this claim was asserted and insisted upon at every stage of the proceedings to their conclusion in the State Supreme Court.

The trial court, in passing upon the demurrer, referred to the Act of 1917 as authorizing a judicial proceeding and held that, coupled with a demand for possession and refusal, it was equivalent to the exercise of the right of reëntry. Upon the trial of the case that court said that the declaration in this act that there had been a failure to perform the conditions of the contract was entitled to some respect, but the court had the right to inquire into the facts and determine whether as found by the legislature they were true. It further held that that act was binding on the court under the evidence. It is apparent that the trial court gave effect to the Act of 1917, although the precise extent is not clearly disclosed. Whatever it was, it entered into and affected the judgment and this judgment was affirmed by the Supreme Court.

We accord to this ruling the respect which we must always give to the decisions of an appellate tribunal of a

State, but, as will presently appear, we have arrived at a result respecting the merits at variance with that pronounced, a result which seems to us manifestly right and forces us to conclude that the construction put upon the contract by the state courts could only have been reached by giving effect to the statute of 1917. What was said in *Terre Haute & Indianapolis R. R. Co.* v. *Indiana,* 194 U. S. 579, 589, is apposite and controlling:

" The state court has sustained a result which cannot be reached, except on what we deem a wrong construction of the charter, without relying on unconstitutional legislation. It clearly did rely upon that legislation to some extent, but exactly how far is left obscure. We are of opinion that we cannot decline jurisdiction of a case which certainly never would have been brought but for the passage of flagrantly unconstitutional laws, because the state court put forward the untenable construction more than the unconstitutional statutes in its judgment. To hold otherwise would open an easy method of avoiding the jurisdiction of this court."

And see *Detroit United Ry.* v. *Michigan,* 242 U. S. 238, 246–248.

The jurisdiction of this Court is, therefore, upheld, and we proceed to the consideration of the case on its merits; and here the crucial question is: What is the nature of the contractual obligation with which the judgment of the state court deals?

By the Act of 1887 numerous obligations were imposed on the canal trustees and their assigns, among them: (a) to complete the canal within two years so as to carry a designated body of water to Gervais Street; (b) furnish a measure of 1500 horsepower to the State and others; (c) keep the canal open for navigation free of charge, and (d) complete the canal as soon as practicable down to the Congaree River. No provision is made in respect of the consequences to result in case of a failure to perform any

of these obligations.　The only specific provision suggesting a forfeiture is " that should the said canal not be completed to Gervais street within seven years . . . all the rights, powers and privileges guaranteed by this Act shall cease, and the said property shall revert to the State."

The effect of the Acts of 1887 and 1890 and the subsequent transactions based on them, was to vest in the defendant title to the property in fee; and for this the consideration moving from the defendant was valuable and substantial.　Did the failure to comply with the provision requiring completion of the canal to the Congaree River divest defendant of this title?

We begin the inquiry with the general rule before us that " conditions subsequent, especially when relied on to work a forfeiture, must be created by express terms or clear implication, and are construed strictly," 2 Washburn on Real Property, 6th ed., § 942; and that " courts always construe clauses in deeds as covenants rather than conditions, if they can reasonably do so." *Id.*, § 938.　Here there are no express terms creating, and no words such as are commonly used to introduce, a condition; nor is there any provision giving the right of reëntry upon failure to perform.　It is urged by the State Supreme Court that the legislative intention must be gathered from the statute as a whole, to be read in the light of its dominant purpose which was to connect the waters of the Broad and Congaree Rivers above and below shoal water, so as to promote navigation; the other purposes, though important, being subsidiary.　But the purpose to accomplish this result is equally consistent with the view which regards the provision in question as a covenant, the only difference being that the remedy for a breach would be different and less drastic.　In *Oregon & California R. R. Co.* v. *United States*, 238 U. S. 393, this Court was called upon to construe the proviso in a land grant act to the

effect that the lands granted must be sold only to actual settlers, etc., and it was held that this did not constitute a condition subsequent, but an enforceable covenant.    In the course of the opinion (p. 419) it was said:

"It appears, therefore, that the acts of Congress have no such certainty as to establish forfeiture of the grants as their sanction, nor necessity for it to secure the accomplishment of their purposes,—either of the construction of the road or sale to actual settlers—and we think the principle must govern that conditions subsequent are not favored but are always strictly construed, and where there are doubts whether a clause be a covenant or condition the courts will incline against the latter construction; indeed, always construe clauses in deeds as covenants rather than as conditions, if it is possible to do so."

And see *Woodruff* v. *Woodruff*, 44 N. J. Eq. 349, 353.

Moreover, the conveyance was absolute and for a valuable consideration, and a mere purpose to attain a particular end, however it may have influenced the legislation, could not have the effect of debasing the fee.    See *Stuart* v. *Easton*, 170 U. S. 383, 394–397, where this Court said: "While the proprietaries may have been mainly influenced in making the grant by a desire to advance the interests of the town, or were actuated by motives of charity, yet the transaction was not a mere gift, but was upon a valuable consideration, and it was the evident intention of the grantors to convey all their estate or interest in the land for the benefit of the county.    The declaration in the patent of the purposes for which the land was to be held, conjoined as it was with a reference to the act of the assembly wherein the trust was created, could not have the effect of qualifying the grant of the fee simple, any more than if the declaration of the purposes for which the land was to be held had been omitted and a declaration of the trust made in an independent instrument."

Not only does the statute contain no positive terms creating, or words requiring the provision in question to

be construed as, a condition subsequent, but the clear implication is to the contrary. The clause relating to the section of the canal down to Gervais Street is expressly that upon failure to complete in seven years the property shall revert to the State. In contrast, it is significant that no forfeiture is specifically prescribed with respect to the non-completion of the Congaree section of the canal. If this requirement, nevertheless, be construed as a condition subsequent there can be no rational ground for holding that the other obligations of the contract are not susceptible of a like construction. Among these obligations is that requiring the completion of the canal to Gervais Street in two years; but the express provision for a forfeiture for failure to complete it in seven years, negatives, as a matter of logical necessity, any suggestion that a forfeiture would be incurred for a failure to complete in two years. The inference, as applied to the other obligations, including that now in question, while not so direct and obvious, is, nevertheless, one which naturally flows from the premises.

The proviso for a forfeiture in the one case is at least strongly persuasive of an intention not to impose it in other cases not so qualified. When, in addition to this, we consider all the circumstances, including the fact that the sale to the defendant was absolute and for a valuable consideration, that there are no express terms creating a condition, no clause of reëntry nor words of any sort indicating such purpose, the conclusion is unavoidable that the obligation in question is a covenant and not a condition subsequent. *Board of Commissioners* v. *Young,* 59 Fed. 96; opinion by Judge, afterward Justice, Lurton. We quote from page 105:

" That the grantor ever contemplated a reverter is not to be presumed, in the light of the presence of absolute words of conveyance and quitclaim, and the absence of any provision for a reverter or reëntry. If it had been intended that the conveyance should terminate on an

abandonment of the public use, it is strange that some language was not used indicative of such purpose. Too much weight was attached to the circumstance that the city wished the title in order to maintain a suit against a trespasser. Such suit could have been maintained without the title. Too little weight has been given to the fact that the deed was upon a valuable consideration; to the fact that it was a quitclaim of all right, title, and interest; to the fact of a previous common-law dedication; and to the failure, under such circumstances, to make the title subject to an express right of reëntry. The minuteness of direction concerning the administration of property conveyed to a public use is insufficient to take the case out of the rule, supported by an overwhelming weight of authority, that the mere expression of a purpose or particular use to which property is to be appropriated will not make the estate a conditional one."

The effect of the Act of 1917 is to convert that which we have held to be a covenant into a condition subsequent and to impose as a penalty for its violation the forfeiture of an extensive and valuable property. It requires no argument to demonstrate that this constitutes an impairment of the contract here involved, in violation of the Constitution. The impairment of a contract may consist in increasing its burdens as well as in diminishing its efficiency. "Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute, or apparently immaterial, in their effect upon the contract of the parties, impairs its obligation." *Green* v. *Biddle*, 8 Wheat. 1, 84. See also *Boise Water Co.* v. *Boise City*, 230 U. S. 84, 90, 92.

The judgment of the State Supreme Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*