## STATE OF SOUTH CAROLINA, ex rel. MAYBANK, Governor, et al. v. SOUTH CAROLINA ELECTRIC & GAS CO.

### No. 576.

District Court, E. D. South Carolina, Columbia Division.

Sept. 26, 1941.

Cordie Page, of Conway, S. C., and Barnard B. Evans, of Columbia, S. C., for plaintiff.

J. B. S. Lyles and W. C. McLain, both of Columbia, S. C., for defendant.

WYCHE, District Judge.

The State of South Carolina, in this action, sues the South Carolina Electric and Gas Company for specific performance of a contract and the recovery of one billion dollars for the breach thereof upon three causes of action. The matter before me is the motion of the defendant to dismiss on the ground that this Court has no jurisdiction of the controversy. The defendant is a resident of South Carolina.

All the causes of action are based on the ownership of the property known as the Columbia Canal by the State of South Carolina prior to 1887, the successive conveyances thereof to defendant's two predecessors in title and to defendant by deeds pursuant to the authority of and expressly subject to the duties and liabilities imposed by the Act of the General Assembly of South Carolina, adopted in 1887, 19 Stat. 1090, as amended by the Act of 1890, 20 Stat. 967.

The Act of 1887 created a Board of Trustees of the Columbia Canal and directed the conveyance of the property to this Board for the benefit of the City of Columbia, the Board to take the deed subject to the duties and liabilities imposed by the Act. The amendatory Act of 1890 authorized the Board to sell and convey the property to any person or corporation, subject to the duties and liabilities imposed by the Act of 1887.

A statement of some of the historical and geographical facts within judicial knowl-

edge may make the objectives of the Act of 1887 more easily understood.

The canal as it stood in 1887 was a partial and incomplete reconstruction and enlargement of an older and smaller canal which was originally constructed to take boats around the extensive shoals at the confluence of the Broad and Saluda Rivers, forming the Congaree River, just opposite the City of Columbia. The Congaree joins with the Wateree below Columbia to form the Santee River, which empties into the Atlantic Ocean at the City of Georgetown, South Carolina.

The old Columbia canal had been constructed about or prior to 1800 and used as an aid to navigation of the Broad and Congaree Rivers to the Cities of Columbia and Georgetown, and through the old Santee-Cooper canal to the City of Charleston. This commerce could not survive the competition of the railroads when they came into existence, and the old canal had been practically abandoned for some years prior to 1887.

The new canal was projected to run from Bull's Sluice on the Broad River, a point north of the City of Columbia, through the western edge of the city, to Rocky Branch on the Congaree River, a point south of the city, a total length of about five miles. No part of the new canal had been completed in 1887; but the northern section had been excavated by the State from Bull's Sluice on the Broad River down to Gervais Street in the City of Columbia, a distance of approximately three miles.

The object of the Act of 1887 was to bring about the construction of the new canal, according to the enlarged dimensions specified in the Act, to promote navigation and develop water power primarily for the benefit of the City of Columbia but indirectly for the benefit of all citizens of the State. The northern section of the canal, from the Broad River entrance down to Gervais Street, was completed by the Board of Trustees, including a diversion dam in Broad River, together with water gates and locks at the Broad River entrance of the canal, prior to the sale of the property by the Board to Columbia Water Power Company in 1892.

The theory of the complaint, including all three causes of action, is that the acceptance of the deeds to the property constituted a contract by defendant and its predecessors, respectively and successively, with the State of South Carolina, to perform the duties and discharge the liabilities imposed by the Act of 1887; and all the rights asserted by the State in this complaint are based on this contract.

The first cause of action is predicated on the requirements of sections 1, 3 and 7 of the Act of 1887 that the canal be completed to Gervais Street, of the dimensions specified, within the time limit imposed, and particularly the proviso of section 1 that a failure to complete the canal to Gervais Street shall cause the property to revert to the State; and seeks a judgment of forfeiture under the allegation that the canal has never been completed to Gervais Street as required.

The State commenced a suit in 1917 against a predecessor in title of defendant, claiming a forfeiture of this property because of a failure to extend the canal down to the Congaree River, at Rocky Branch, "as soon as is practicable", as required by section 7 of the Act of 1887. On an interlocutory appeal the Supreme Court of South Carolina construed this requirement to constitute a condition subsequent working a forfeiture under the laws of South Carolina, and later affirmed a judgment of the trial court for the possession of the property entered on this theory. State v. Columbia Ry., Gas & Electric Co., 112 S.C. 528, 100 S.E. 355, and Id., 129 S.C. 68, 123 S.E. 646.

On writ of error the Supreme Court of the United States, 261 U.S. 236, 43 S.Ct. 306, 67 L.Ed. 629, reversed this judgment because the construction of the contract made by the Supreme Court of South Carolina was not supported by the language of the Act of 1887, and held that the provision in question was a covenant rather than a condition. The Supreme Court based the federal appellate jurisdiction on the action of the trial court in giving force and effect to a legislative declaration of forfeiture found in section 1 of the South Carolina Act of 1917. This Act also created a Canal Commission to recover possession of the property, and this Commission instituted the suit in the name of the State as authorized by the Act. 30 Stat. 348.

Upon the commencement of the forfeiture action, the defendant filed therein its petition and bond for removal to the federal court, alleging that the suit arose under the Constitution of the United States because the complaint alleged and relied

upon the legislative forfeiture declared in the Act of 1917. But the state court declined to accept the petition and bond upon the objection of the State; it held that "plaintiff does not make its claim under the Constitution of the United States," and that defendant could not insert and anticipate a constitutional question so as to make the case a removable one, citing Arkansas v. Kansas & Texas Coal Company et al., 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed. 144; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218. The federal district court remanded the case upon the same ground on the motion of the State. The State successfully contended in this former action that the rights which this complaint again asserts arose under the laws of South Carolina and not under the laws of the United States.

What has been said with reference to the first cause of action is equally pertinent to the second, which alleges that various requirements of the Act of 1887 as to the construction and maintenance of the canal are covenants binding on the defendant as grantee and seeks specific performance of them, evidently in the alternative; and also to the third cause of action, which seeks general damages of a billion dollars for the past failure of defendant and its predecessors in title to perform these same covenants. The rights asserted by the State in the second and third causes of action are likewise rights arising under the contract made by the South Carolina statute and the conveyances pursuant thereto.

The doctrine of judicial notice applies to this motion. Lindsley v. Natural Carbonic Gas Company, 220 U.S. 61, 69, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas.1912C, 160; State v. John P. Nutt Co., 180 S.C. 19, 185 S.E. 25. The federal court will take judicial notice of the common law and statutes of the State, Owings v. Hull, 9 Pet. 607, 9 L.Ed. 246; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, as well as the decisions of the highest court of the State construing such statutes. Holly v. McDowell Coal & Coke Co., 4 Cir., 203 F. 668, at page 670; Barker v. Eastman, C.C.N.H., 192 F. 659, affirmed 1 Cir., 206 F. 865; Hennessy v. Tacoma Smelting & Refining Co., 9 Cir., 129 F. 40. Judicial notice of a statute includes the facts recited or recognized in the statute. Watkins v. Holman, 16 Pet. 25, 10 L.Ed. 873; State v. Broad River Power Co. et al., 177 S.C. 240, 181 S.E. 41, 48.

By the Act of 1925, 34 Stat. 852, and section 3 of the contract thereby authorized, the State released defendant's predecessor in title, its successors and assigns, from all duties and obligations imposed by the Act of 1887 (page 853), excepting only the duty to keep the canal open for navigation, and this was by section 12 of the contract (page 858) limited to the canal as it then existed and now exists. Section 2 of the Act (page 858) reserved to the State the right to extend and complete the canal according to the plan of the Act of 1887, so that the State has assumed any duty to keep the new or extended portion of the canal open for navigation, if and when such extension shall be made. The property was conveyed to defendant following this settlement in 1925. The Attorney General brought an action against defendant, under its former name of Broad River Power Company, and defendant's predecessor in title to test the validity of this Act and settlement contract, pursuant to instructions of the Act of 1933. 38 Stat. 1180. The trial court held that the Act and settlement contract of 1925 were based on substantial and adequate consideration and were valid as against various objections based on the Constitution of South Carolina, which were asserted by the State. The Supreme Court affirmed in a short opinion filed in 1935, whereby it adopted the order of the trial court as the judgment of the Supreme Court. State v. Broad River Power Co., 177 S.C. 240, 181 S.E. 41.

There was no suggestion in this litigation that any of the many questions raised and decided were federal questions or questions of federal law. All claims of the State were considered as advancing rights arising under the laws of South Carolina.

When a plaintiff seeks to enter a district court of the United States, he must put his finger on a federal statute that will unlatch the door. The grounds for jurisdiction of this court in this case are stated in the complaint as follows: " * * * that the matters and things herein alleged concern, grew out of, are connected with and pertain to the Congaree and Broad Rivers and the Columbia Canal all of which are navigable waters and the Columbia Canal was to connect the two rivers and form an interstate navigable waterway open to the citizens of the State of South Carolina and of the United States and arise from a Statute of the State of South Carolina making and constituting a contract between the said State of South Carolina and the defend-

ant's predecessor in title and this defendant concerning the opening and maintaining of the said Canal as a part of an interstate waterway and for other purposes", and the plaintiff contends that the action is one arising under the Constitution and laws of the United States. 28 U.S.C.A. § 41.

How and when a case arises under the Constitution and laws of the United States has been discussed in numerous decisions, but it is well settled that to bring a case within the statute, (1) a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action; (2) the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another; (3) a genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto; (4) the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal; (5) the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. Gully v. First National Bank, 299 U.S. 109, at pages 112, 115, 57 S.Ct. 96, 81 L.Ed. 70, at pages·72, 73.

It is manifest that a contract, which is executed and to be performed in the State of South Carolina, takes its validity and obligation from the laws of South Carolina, and that all rights accruing to the State therefrom, including all rights asserted in this complaint, are rights created by the laws of South Carolina and not by the laws of the United States.

If a right to a judicial forfeiture of the property exists in the State as alleged, this is a right based solely on the South Carolina contract and created alone by the laws of South Carolina.

The opinions of the Supreme Court of South Carolina cast no doubt on the self-evident proposition that all rights of the State under the statutory contract herein questioned, are created by the laws of South Carolina and not by the laws of the United States; and the fact that the Supreme Court of the United States took jurisdiction and reversed the State Court's construction of the contract, under the impairment clause of the Constitution of the United States, does not militate against the conclusion that the rights of the State under the contract are rights created solely by the laws of South Carolina.

There is no right or immunity alleged in the complaint of such a nature that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. There is no genuine or present controversy arising under the Constitution or laws of the United States disclosed upon the face of the complaint.

Plaintiff's counsel argues that the allegations of paragraph VI of the first cause of action, paragraph VI of the second cause of action, and paragraph X of the third cause of action, all in practically identical language, which assert that the release of the State's right of navigation in the canal was in violation of the Constitution and laws of the United States, as well as of South Carolina, were intended to anticipate an expected affirmative defense, whereby defendant would set up the release under the Act of 1925 and the contract pursuant thereto. These allegations will not avail plaintiff as a basis of jurisdiction because they go beyond a statement of the plaintiff's cause of action and anticipate or reply to a probable defense.

Counsel for the State contends further that the complaint alleges that the Columbia Canal is a navigable stream and says that the question of navigability is a federal question which gives this court jurisdiction of the suit.

At most the question of navigability may be a question of federal law in some cases but not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. Gully v. First National Bank, supra. The federal question must appear not by mere inference or suggestion, but as an essential or integral part of the case. The plaintiff has pointed to no federal law that is an essential or integral part of either of his causes of action. The correct decision of plaintiff's cause of action does not depend upon the construction of any federal statute. Cohens v. Virginia, 1821, 6 Wheat. 264, 379, 5 L.Ed. 257. The plaintiff does not allege any federal statute as the basis of its suit, but on the contrary alleges "that the matters and things herein alleged * * * arise from a Statute of the State of South Carolina making and constituting a contract between the said State of South Carolina and the defendant's predecessor in title and this defend-

ant concerning the opening and maintaining of the said Canal as a part of an interstate waterway and for other purposes". Defendant's special duty is based on its contract with the State rather than on the general inhibitions found in both federal and state laws; it is this special and affirmative duty of defendant which is the basis of the claims made by the State in this action. Under such facts there is no federal jurisdiction. Williamette Iron Bridge Co. v. Hatch, 125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629; North Shore Boom & Driving Co. v. Nicomen Boom Co., 212 U.S. 406, 29 S.Ct. 355, 53 L.Ed. 574.

■ Defendant calls attention to State v. Columbia Water Power Co., decided in 1909, in which there were three opinions, 82 S.C. 181, 63 S.E. 884, 22 L.R.A.N.S., 435, 129 Am.St.Rep. 876, 17 Ann.Cas. 343; State v. City of Columbia, 85 S.C. 113, 68 S.E. 1119 and State v. Columbia Water Power Co., 90 S.C. 568, 74 S.E. 26. This was an action brought by the State in the original jurisdiction of the Supreme Court of South Carolina against a predecessor in title of defendant and the City of Columbia, wherein the State successfully sought a mandatory injunction requiring defendant to perform its covenant to keep the canal open for navigation by repairing the locks at the entrance of the canal and removing obstructions to navigation that had been permitted to accumulate, and requiring the City of Columbia to remove a bridge that it had constructed across the canal, immediately above the surface of the water. The Court adjudged that the canal was a navigable waterway, recognized the affirmative duty of defendant's predecessor to keep the same open for navigation, and decreed as stated. The decree expressly kept the case open so that any and all of the parties might "apply for such further orders as may be necessary to protect their rights as herein declared," etc. 90 S.C. at page 580, 74 S.E. at page 30.

This decision is res judicata as to the parties here, and I am satisfied that in view thereof there can never be a real and substantial question between the parties hereto as to the navigability of the Columbia Canal, because "when once found to be navigable, a waterway remains so." United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 299, 85 L. Ed. 243. The only substantial question that might arise in this suit, if it proceeds, or in any other action between the parties hereto, would be a factual dispute as to

whether the defendant has since breached its affirmative covenant to keep the canal open for navigation. This would be a simple question of fact arising under the law of South Carolina, and no reason appears to me why the State could not readily secure relief therefor by a petition filed in this pending action.

Neither of the cases cited by plaintiff is authority for its contention that the controversy here is a suit arising under the Constitution and laws of the United States. The first case, United States v. State of Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844, was brought originally in the United States Supreme Court by virtue of the jurisdiction conferred by section 2 of Article 3 of the Constitution of the United States and the complementary federal statute, 28 U.S.C.A. § 341. In saying that the question of navigability was a "federal question" Chief Justice Hughes was not speaking in the jurisdictional sense, no question of jurisdiction was raised or considered in the opinion. He later said "State laws cannot affect titles vested in the United States," making it clear that what he meant was that the question of navigability was to be determined according to the rule as laid down in the federal decisions. This case is not authority for the proposition that every suit involving the question of navigability of a stream is a suit arising under the laws of the United States. This case holds that when the title of the United States turns on the navigability of a stream, then this question will be decided by the federal court according to the rule laid down by the federal decisions.

■ The second case relied on by the plaintiff, Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 413, 65 L.Ed. 847, was an action brought by the United States in the district court to restrain defendant from constructing a dam in the Des Plaines River in violation of the federal statute, 33 U.S.C.A. § 401 et seq. It was evidently brought by the Attorney General under the authority conferred by section 406, as later discussed at length. 28 U.S.C.A. § 41(1) specifically covers such a suit. With reference to the point stressed by counsel, the Supreme Court said: "Our attention is called to the fact that in People [ex rel. Deneen] v. Economy [Light &] Power Co., 241 Ill. 290, 320-338, 89 N.E. 760, the Supreme Court of Illinois held that the Des Plaines [River] in its natural condition is not a navigable stream; and it is intimated that

we ought to follow that decision. *A writ of error brought to review it was dismissed by us because no federal question was involved.* [People of State of Illinois ex rel. Dunne v. Economy Light & P. Co.] 234 U.S. 497, 510, 524, 34 S.Ct. 973, 58 L.Ed. 1429 [1434, 1439]. Of course, the decision does not render the matter res judicata, as the United States was not a party. The District Court in the present case treated it as not persuasive, because it appeared that evidence was wanting which is present here; and we cannot say that the court below erred in not following it." (Emphasis added.) This shows that the question of navigability is not a federal question in the jurisdictional sense, that either a state court or federal court when called upon to decide this question will follow the authority controlling it. But, as a practical matter, the question of navigability has arisen more frequently in federal cases, so that the federal rule is well established.

The question for decision in the case of United States v. Appalachian Electric Power Co., supra, was whether the Appalachian Electric Power Company should be enjoined from the construction of a hydroelectric power dam at the New River at Radford, Virginia. To obtain the injunction the United States filed its complaint in the District Court of the United States for the Western District of Virginia, in which it charged that the erection of the dam would be in violation of sections 9 and 10 of the Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 401, 403, and also contrary to the provisions of sections 4(d) and 23 of the Federal Water Power Act of 1920, 16 U.S.C.A. §§ 791–823, which was amended August 26, 1935, 49 Stat. 838, 16 U.S.C.A. § 791a et seq. This question involved the scope of the federal commerce power in relation to conditions in licenses required by the Federal Power Commission for the construction of hydro-electric dams in navigable rivers of the United States, and there was a preliminary question as to the navigability of New River. The Federal District Court in Virginia had jurisdiction in this case because it was a suit by the United States to enforce the laws of the United States. 28 U.S.C.A. § 41.

The State lastly contends that it is entitled to invoke the remedy vested in the Attorney General by 33 U.S.C.A. § 406, because that section provides that any person violating the provisions of preceding sections 401, 403 and 404 shall be guilty of a misdemeanor, and, further, that the removal of obstructions to navigation erected in violation of said sections "may be" enforced by the injunction of the district court, "and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States." The State's argument is that the statute does not say that such proceedings "must be" so instituted, and that any citizen or any body politic or corporate may avail himself of this remedy.

No specific decision of the question whether this remedy is exclusively vested in the Attorney General by section 406 has been called to my attention. This question was expressly left open in Carolina Power & L. Co. v. South Carolina Public Service Authority, 4 Cir., 94 F.2d 520. In Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870, the Supreme Court held that the remedy vested in the Attorney General by section 4 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 4, by language similar to that used in section 406, was exclusively so vested, and that the State of Minnesota was not entitled to allege a violation of the Sherman Anti-Trust Act as a basis for invoking the original jurisdiction of the federal district court. This case has been many times cited and followed, including Progressive Miners of America v. Peabody Coal Co., 7 Cir., 75 F.2d 460, where, upon its authority the court held that a private party could not base an action to enjoin a violation of the National Industrial Recovery Act upon section 3(c) of that Act, 48 Stat. 196, making it the duty of district attorneys, under the direction of the Attorney General, to institute proceedings in equity to restrain violations of the Act.

The provisions of section 406 must be construed in connection with all other provisions of Title 33, giving effect to each, so as to make a harmonious whole, since they all relate to the same subject matter. Such consideration will show that the respective use of the mandatory "shall be," and of the permissive "may be," is deliberate and purposeful on the part of the Congress. The mandatory "shall be" is used in sections 1 and 413 so as to require the Secretary of War to adopt and publish appropriate regulations, to require various federal officers charged with their enforcement to arrest all violators, and to require all district attorneys to prosecute them; no discretion is to be exercised in these respects. When section 406 provides that the removal of prohibited structures *"may be* enforced by the injunction of any district

court," and that "proper proceedings to this end *may be* instituted under the direction of the Attorney General of the United States," the Congress intended that the Attorney General and the district court, respectively, should exercise appropriate discretion in each instance in determining whether an injunction proceeding should be instituted and whether an injunction should be granted. The Congress did not intend that it should be mandatory on the Attorney General to institute injunction proceedings in every case, or that it should be mandatory on the district court to grant an injunction in every suit. The construction suggested by the State, that any citizen or body politic or corporate may institute such injunction proceedings, would defeat the purpose of the Congress to leave the question of the institution of injunction proceedings in many matters of grave public consequence to the discretion of the Attorney General as a responsible public official, by conceding this right to private parties in the pursuit of their selfish interests.

 For the foregoing reasons I must conclude that this action does not really and substantially involve a controversy within the jurisdiction of this Court, and that it is my duty to dismiss it under the federal statute. 28 U.S.C.A. § 80.

 It has been called to my attention that, incident to the filing of the complaint, plaintiff filed a paper entitled notice of pendency of action. Apart from the contention of defendant that this paper was filed without authority of law, it follows as a matter of course that such notice must fall with the complaint, and that the Clerk of this Court should mark the same canceled of record.

An appropriate order will be entered.