**UNITED STATES of America,
Plaintiff,**

v.

**SCHOOL DISTRICT NO. 2 FRACTIONAL ATHENS TOWNSHIP, CALHOUN COUNTY, MICHIGAN, and L.B.S. Aircraft Corporation, Defendants.**

**No. 11007.**

United States District Court
E. D. Michigan, S. D.

Aug. 27, 1954.

Willis Ward, Asst. U. S. Atty., Detroit, Mich., Joseph F. Knowlin, Department of Justice, Washington, D. C., for plaintiff.

Chas. R. Moon, Wm. G. Lerchan, Jr., of Dickinson, Wright, Davis, McKean & Cudlip, Detroit, Mich., Robert. P. Smith, Robt. V. Smith, J. W. Kiernan, of Smith, Ristig & Smith, Washington, D. C., Victor E. Bucknell, Vicksburg, Mich., Bucknell, Birkhold, Fayling & Luna, Kalamazoo, Mich., for defendant.

CHANDLER, District Judge.

This is an action by the United States to recover damages caused by the sale and transfer by the Athens Public Schools of an airplane obtained for nonflight instructional purposes from the War Assets Administration under the provisions of the Surplus Property Act of 1944.

In 1944, Congress passed the Surplus Property Act, 58 Stat. 765, 50 U.S. C.A.Appendix, § 1611 et seq., providing for the disposal of surplus property. Section 13 provided:

"Sec. 13. (a) The Board shall prescribe regulations for the disposition of surplus property to States and their political subdivisions and instrumentalities, and to tax-supported and nonprofit institutions, and shall determine on the basis of need what transfers shall be made. In formulating such regulations the Board shall be guided by the ob-

jectives of this Act and shall give effect to the following policies to the extent feasible and in the public interest:

"(1)(A) Surplus property that is appropriate for school, classroom, or other educational use may be sold or leased to the States and their political subdivisions and instrumentalities, and tax-supported educational institutions, and to other non-profit educational institutions which have been held exempt from taxation under section 101(6) of the Internal Revenue Code. * * *

"(C) In fixing the sale or lease value of property to be disposed of under subparagraph (A) * * * the Board shall take into consideration any benefit which has accrued or may accrue to the United States from the use of such property * *."

Section 15 of the Act provided:

"(a) Notwithstanding the provisions of any other law but subject to the provisions of this Act, whenever any Government agency is authorized to dispose of property under this Act, then the agency may dispose of such property by sale, exchange, lease, or transfer, for cash, credit, or other property, with or without warranty, *and upon such other terms and conditions, as the agency deems proper* * * *." (Italics ours.)

"(b) Any owning agency or disposal agency may execute such documents for the transfer of title or other interest in property or take such other action as it deems necessary or proper to transfer or dispose of property or otherwise to carry out the provisions of this Act, and, in the case of surplus property, shall do so to the extent required by the regulations of the Board."

Pursuant to such Act, the War Assets Administration issued Regulation No. 4, 32 C.F.R., Supp.1946, § 8304.1 et seq., governing the disposal of aircraft, components and parts of aircraft.

Section 1(b) (3) and 1(b) (4) distinguished between salvage, which had serviceable components, and scrap, which had value only for its basic material content.

Section 8304.11(b) provided:

"(b) The disposal agency shall establish procedures pursuant to which educational * * * institutions or instrumentalities may make written application for surplus aeronautical property available for disposal to such institutions or instrumentalities. Such procedures shall include (1) a certification that the applicant is an educational * * * institution or instrumentality as defined in § 8304.1, (2) a certification of the purposes for which the property is to be acquired, and in the case of aircraft an agreement that it will not be flown except for purposes of research or experiment in connection with the science of aeronautics, and (3) an agreement that the property will not be resold to others within three (3) years of the date of purchase without the consent in writing of the disposal agency unless it is mutilated or otherwise rendered unfit for use except as scrap."

On November 26, 1946, W. D. Munroe, Superintendent of the Athens Public Schools, submitted an agreement known as War Assets Administration Form 65, to the War Assets Administration. The War Assets Administration formulated and adopted Form 65 as part of its standard procedure and required that educational institutions which were desirous of obtaining surplus aeronautical property for instructional purposes execute and file it. Form 65 provided:

"6. That the acquired property will not be used for any actual flight purposes.

"7. That all acquired property when unfit for the above purpose will be sold only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content. Sales consummated within three (3) years

of the date of acquisition must have the prior approval of the Disposal Agency.

"8. That this Agreement shall be effective for all future transfers of Aeronautical Property under the provisions of Surplus Property Administration Regulation No. 4, as amended from time to time."

Upon payment of $200.00 to the United States, the War Assets Administration issued Sales Document Number 6538195 and a form of Release of Custody of Aircraft dated June 26, 1947. The Athens Public Schools thereupon entered into possession of the aircraft. On July 10, 1951, when the plane was still of value for salvage purposes, i. e., for its serviceable components, the Board of Education of the Athens Public Schools sold it for the total sum of $7,-120 to L.B.S. Corporation, which dismantled it for salvage and scrap.

The agreement between the Athens Public Schools and L.B.S. Corporation provided:

"1. Conveyance of this aircraft is made subject to all pertinent Federal and State Statutes and *subject to all rules and regulations of the War Assets Administration and its successors* and/or any other administrative agency or tribunal having any authority or interest in such conveyance and *is subject to and restricted by all covenants and conditions contained in the instruments under which the said aircraft was acquired by the Athens Agricultural Schools.* * * *

"3. *Party of the first part conveys only such title as by facts and by operation of law it holds.* However, party of the first part believes that it has the power to convey title to party of the second part." (Italics ours.)

The defendants, Athens Public Schools and L.B.S. Corporation, assert that under Regulation No. 4, 32 C.F.R., Supp. 1946, § 8304.11(b) (3), an educational institution which purchases surplus aeronautical property from the War As-

sets Administration has an unlimited right to dispose of the property after three years.

The United States claims that the right of the Athens Public Schools to sell the plane was limited by the terms of Form 65 and that therefore the United States always retained an interest in the aircraft; that the aircraft was transferred to the Athens Public Schools for instructional purposes only; and that the transfer of the aircraft to L.B.S. Corporation was a violation of its rights.

Although a reading of Regulation No. 4, 32 C.F.R., Supp.1946, § 8304.1(b) (3), standing alone, by implication, supports the arguments of the defendants, nevertheless, the Athens Public Schools and the United States entered into a contract, a fair construction of which clearly shows that it was the intention of the parties that the plane be used for instructional purposes until it was no longer fit for such use and that it might then be sold only as scrap. The $200 paid by the Athens Public Schools was a nominal sum for the plane, and the major consideration which the United States was to receive was the instruction which the school would give. See also H.Rep. No. 1890, 78th Cong., 2nd Sess., which states that: "The provision (Sec. 13(a) (1) (C) authorizing the Board to take into consideration any benefit which has accrued or may accrue to the United States from the use of educational property * * * by the States, political subdivisions, instrumentalities and institutions, * * simply has the effect of treating the benefit so accruing to the United States as a medium of payment."

Defendants argue that the contract provisions in Form 65 should be construed so as to be consistent with Regulation No. 4, or, failing that, should be held to be contrary to the Surplus Property Act of 1944 and Regulation No. 4, and, therefore, void. Regulation No. 4 does not in any sense limit the right of the disposal agency to obtain more favorable terms on behalf of the Government. Form 65 is clearly authorized by

the first paragraph of Section 8304.-11(b) and by Section 13 of the Act and constitutes a valid contract between the parties. Lomax Transportation Company v. United States, 9 Cir., 1950, 183 F.2d 331.

It is unnecessary to characterize the exact nature of the property rights which the respective parties had in the surplus plane. It is at least clear that the parties were aware at all times that the United States retained an interest in the aircraft. The sale to L.B.S. Corporation by the Athens Public Schools effectively precluded further use of the plane for instruction. This was a violation of the property rights of the United States for which the United States is entitled to recover damages in the amount of $10,000, the agreed value of the airplane at the time of the sale to L.B.S. Corporation. U. S. v. Michigan, 1903, 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103.