**UNITED STATES of America, Plaintiff,**

v.

**George C. FINN, Charles C. Finn, International Airports, Inc., Peter A. Bancroft, Vineland Elementary School District of Kern County, and Seaboard Surety Company, a corporation, Defendants.**

**Civ. A. No. 14309.**

United States District Court, S. D. California, Central Division.

Nov. 5, 1954.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Louis Lee Abbott, Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff.

George C. Finn, Charles C. Finn, Hollywood, Cal., in pro. per.

A. J. Blackman, Los Angeles, Cal., for defendant International Airports, Inc.

Roy Gargano, County Counsel Kern County, Kit L. Nelson, Asst. County Counsel, Kern County, Bakersfield, Cal., for defendants Vineland Elementary School Dist. and Peter A. Bancroft.

Wallace & Cashin, Los Angeles, Cal., for defendant Seaboard Surety Co.

MATHES, District Judge.

The United States sues for declaratory relief, 28 U.S.C. §§ 1345, 2201, 2202, breach of contract, and claim and delivery, Calif.Code Civ.Proc. §§ 509–521; Fed.Rules Civ.Proc. rule 64, 28 U.S.C.A., alleging the Government to be "the owner and * * * now entitled to the immediate possession of a certain C–46A Curtiss-Commando airplane bearing United States Army serial number 42–3645." C.A.A. Reg. No. 111 H; 58 Stat. 765, 50 U.S.C.A.Appendix, §§ 1611–1646; 40 U.S.C.A. §§ 471–492. Plaintiff also seeks damages from defendant Vineland Elementary School District for breach of contract, and from defendants Finn and Bancroft for inducing breach of contract.

After World War II the War Assets Administration was engaged in the disposal of war-surplus aircraft and, to effect the greatest public use of such aircraft, gave preference to public bodies and educational institutions such as defendant Vineland Elementary School District near Bakersfield, California. In June and July of 1946 defendant School District evidenced an interest in acquiring one of these war-sur-

plus aircraft, and possession of the C–46A transport airplane in suit was transferred to the School District on July 25, 1946, by virtue of a "Release of Custody" executed pursuant to an "Agreement" [W.A.A. Form 65] signed a month earlier. Defendant School District paid the Government a cash consideration of $300, and thereafter used the airplane as a classroom for over four years.

In 1950 defendants Finn desired to acquire the airplane from the School District and offered cash and certain labor and materials in exchange for it. Defendant School District published an invitation for bids and, defendants Finn being the only bidders, on February 28, 1951 defendant Bancroft, the Superintendent of Schools, transferred possession of the airplane to defendants Finn.

Thereafter defendants Finn, following negotiations in Washington with officials of the War Assets Administration and the Civil Aeronautics Administration, procured the issuance in their names by the C. A. A. of a certificate of ownership of the aircraft.

Because the airplane needed substantial repair before it could be considered airworthy, defendants Finn had defendant International Airports, Inc. do the necessary work. On August 31, 1951, defendants Finn, as mortgagor, and defendant International, as mortgagee, executed a chattel mortgage on the airplane as security for a loan of $15,000. On the same date and as part of the same transaction, defendants Finn leased the airplane to defendant International.

By virtue of the provisions of rule 64 of the Federal Rules of Civil Procedure, the Government invoked the summary procedure known in the law of California as "Claim and Delivery of Personal Property" Calif.Code Civ.Proc. §§ 509–521, and thereby was enabled to cause the Marshal of this Court to seize possession of the aircraft in suit prior to trial. Id. §§ 511, 512, 518, 521. The seizure took place on September 15, 1952, and the Government has been in possession of the aircraft since that date.

Defendant Seaboard Surety Company filed a disclaimer of any interest. The remaining defendants answered and asserted claims prior to those of the Government. Defendants Finn filed a counterclaim for damages for the Government's alleged wrongful seizure and detention of the aircraft.

These are the facts in brief. The demand of defendants Finn for a jury trial having been tardily filed, an advisory jury was empaneled. Fed.Rules Civ. Proc., rules 38(b), 39(c), 28 U.S.C.A. Upon the close of the evidence, a form of special verdict comprising twenty interrogatories was submitted to the jury. The unanimous findings of the jury in answer to the interrogatories will be adopted as findings of the Court, and are appended hereto.

The Government's claim of ownership and for breach of contract depend on the documents signed by the various parties as governed by the applicable statutes and regulations. The claim of ownership will be discussed first.

At the time of the transaction between the Government and defendant School District, the Surplus Property Act of 1944 provided in part: "Disposal to Local Governments and Nonprofit Institutions. * * * The [Surplus Property] Board shall prescribe regulations for the disposition of surplus property to States and their political subdivisions and instrumentalities, and to tax-supported and nonprofit institutions * *. In formulating such regulations the Board shall be guided by the objectives of this Act and shall give effect to the following policies to the extent feasible and in the public interest: (1)(A) Surplus property that is appropriate for school, classroom, or other educational use may be sold or leased * * *." 58 Stat. 770, 50 U.S.C.A.Appendix, § 1622(a) (1944).

The applicable regulation then provided in part that: "The disposal agency shall compile a list of such items and shall ascertain fixed *prices.* * * * The disposal agency is authorized to dispose of such property to educational or

public-health institutions or instrumentalities at the *prices* so approved. * * [T]he property will not be *resold* to others within three years. * * * " 32 C.F.R.1946 Supp. § 8304.11. [Emphasis added.]

In determining, first of all, the nature of the interest in the airplane acquired by defendant School District, the intention of the parties as disclosed by the documentary evidence must be noted. The War Assets Administration, in its form sheet of instructions addressed to the School District, outlines in Instruction III "How to Purchase", and refers in Instruction VI to the "Price" of the airplanes. U. S. Govt. Printing Office 16–47792–1. Moreover the quoted regulation itself refers to "prices" and "resold". 32 C.F.R.1946 Supp. § 8304.11. Defendant Bancroft filled out a "Purchase Order" [W.A.A. Form 66] on June 25, 1946. On July 10, 1946, the War Assets Administration issued a "Sales Receipt" which mentions "purchases" in the name of defendant School District, and the "price". WAA–LA–12.

The authority of the War Assets Administration to pass title is made clear by the above-quoted provisions of the statute that: "Surplus property * * * appropriate for school, classroom, or other educational use may be sold or leased * * *." 58 Stat. 771, 50 U.S. C.A.App. § 1622(a)(1)(A)(1944).

■ But most important, at the time the airplane was delivered to defendant School District, a sale was the only permissible method of disposal; for the regulation then provided: "[A]fter June 30, 1946, transport aircraft shall be disposed of only by sale." 32 C.F.R. 1946 Supp. § 8304.7. Interpreted in the light of the statute and the regulation, the documentary evidence compels the conclusion that in 1946 full title to the airplane in suit was transferred by the War Assets Administration to Vineland Elementary School District.

■■ The contention is made, however, that violation by defendant School District of restrictions upon use and disposal of the aircraft caused title to revert to the Government. Form 65 contains no reservation of power in the Government to revest title to the property, nor any provision that title will automatically revest on violation of the restrictions. Moreover restrictions upon title which restrain alienation and use are not favored by the law. See: Davis v. Gray, 1872, 16 Wall. 203, 230, 83 U.S. 203, 230, 21 L.Ed. 447; Los Angeles University v. Swarth, 9 Cir., 1901, 107 F. 798, 803, 54 L.R.A. 262. So where, as here, there are "no express terms creating a condition, no clause of re-entry nor words of any sort indicating such purpose, the conclusion is unavoidable that the obligation in question is a covenant * * *." Columbia Railway, etc., Co. v. South Carolina, 1923, 261 U.S. 236, 248, 250, 43 S.Ct. 306, 310, 67 L.Ed. 629, for the breach of which damages would be the only remedy. See: United States v. Michigan, 1903, 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103; Northern Pacific Railway v. Townsend, 1903, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044; American Emigrant Co. v. County of Adams, 1870, 100 U.S. 61, 71, 25 L.Ed. 563.

It is conceded that defendant School District on February 28, 1951, by a C.A.A. form bill of sale signed by defendant Bancroft, did "hereby sell, grant, transfer, and deliver [to defendants Finn] all of * * * [its] right, title, and interest in and to such aircraft. * * * " Earlier, on October 9, 1950, defendant Bancroft had signed a "Bill of Sale" which was typed on the letterhead stationery of the School District and, referring to the rules and regulations of the W.A.A., declares: "We hereby sell * * *." These documents show a plain intention on the part of defendant School District to pass title to the airplane to defendants Finn.

■ It is urged nonetheless that the sale to defendants Finn is void because the consideration included labor and materials as well as cash. The applicable California statute provides in part that the "board of any school district may sell * * * for cash

* * *." Cal.Education Code, § 18701. This statute is permissive only; the auxiliary verb "may" does not limit the authority conferred to cash sales. It follows that at least as early as February 28, 1951, defendant School District passed valid title to defendants Finn.

On May 28, 1952, defendant International Airports, Inc. commenced an action in the Superior Court of the State of California in and for the County of Los Angeles for claim and delivery of the airplane; and on June 9, 1952, defendant International filed in the State Court an action for foreclosure of the chattel mortgage. Defendants Finn answered the complaints, and counterclaimed that defendant International had failed to lend additional funds as required by the agreement and had failed to pay agreed rentals under the lease. The two cases were consolidated for trial and the State court rendered judgment in favor of defendant International. An appeal from this judgment is now pending.

In keeping with the well-founded policy that litigants may try their causes but once, this Court in its discretion will leave final determination of the controversies between defendants Finn and International Airports to the State courts, since a determination of those claims is not essential to decision of the other claims at bar. See: Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Highway Ins. Underwriters v. Nichols, D.C.E.D. Okl.1949, 85 F.Supp. 527; Veeder-Root, Inc., v. Henrietta, D.C.D.Conn.1943, 52 F.Supp. 918.

To decide plaintiff's claim here it is sufficient to hold that the Government has neither right to possession of nor valid claim of title to the airplane in suit.

The alleged breach and inducing breach of contract are next to be considered. At the time of the sale to defendant School District, the relevant reg-ulation governing disposal of surplus airplanes provided in part: "The disposal agency shall establish procedures pursuant to which educational * * * institutions or instrumentalities may make written application for surplus aeronautical property available for disposal. * * * Such procedures shall include * * * (2) a certification of the purposes for which the property is to be acquired, and in the case of aircraft an agreement that it will not be flown except for purposes of research or experiment in connection with the science of aeronautics, and (3) an agreement that the property will not be resold to others within three (3) years of the date of purchase without the consent in writing of the disposal agency unless it is mutilated or otherwise rendered unfit for use except as scrap." 32 C.F.R. 1946 Supp. § 8304.11(b).

The printed Form 65 used by plaintiff to set forth the agreement between the Government and defendant School District did not contain the restrictions of the regulation just quoted, but contained instead the terminology of a superseded regulation. See 10 F.R. 10362, 5460, § 8304.4(c) (1945). The result is that Form 65, as executed by the Government and defendant School District, provides in part: "Vineland Elementary School District * * * hereby certifies and agrees as follows: * * * (6) That the acquired property will not be used for any actual flight purposes. (7) That all acquired property, when unfit for the above purpose, will be sold only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content. Sales consummated within three years of the date of acquisition must have the prior approval of the Disposal Agency."

Thus Form 65, as executed, prohibits entirely all flight use, whereas subsection (2) of the applicable regulation then permitted both research and experimental flight. Moreover the restrictions as to disposal contained in Form 65 are without limit in point of time, whereas subsection (3) of the amended regula-

tion limits restrictions upon disposal to the period of three years next following purchase.

█ Clearly, then, the restrictions as to disposal and use in Regulation § 8304.11(b)(2), (3) and those set forth in the executed Form 65 are contradictory and cannot stand together. The language of the regulation being mandatory, and having the force of law to the extent authorized by the statute, must control. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499; See: United States v. City and County of San Francisco, 1940, 310 U.S. 16, 30, 60 S.Ct. 749, 84 L.Ed. 1050; Ashwander v. T. V. A., 1936, 297 U.S. 288, 338, 56 S.Ct. 466, 80 L.Ed. 688; United States v. Weisbrod, 7 Cir., 1953, 202 F.2d 629.

█ This conclusion requires that, if valid, subsection (2) of Regulation § 8304.11(b) must be read into Form 65 in lieu of the above-quoted agreement (6) of Form 65 as executed here. The result follows that defendant School District and the Government agreed that the airplane in suit "will not be flown except for purposes of research or experiment. * * *"

█ This holding is buttressed by the settled rule that a valid administrative regulation binds the administrator himself equally with others, United States ex rel. Accardi v. Shaughnessy, supra, 347 U.S. 260, 74 S.Ct. 499; Chapman v. Sheridan-Wyoming Co., 1950, 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393; Bridges v. Wixon, 1945, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; See Jeffries v. Olesen, D.C.S.D.Cal.1954, 121 F.Supp. 463, 476, the same as though the provisions of the regulation were prescribed in terms by the statute. Atchison, T. & S. F. Ry. Co. v. Scarlett, 1937, 300 U.S. 471, 474, 57 S.Ct. 541, 81 L.Ed. 748.

Assuming now that subsection (2) of the quoted regulation restricting flight of surplus aircraft was intended to remain effective beyond the three-year period specified in subsection (3), and so serve as a sort of covenant running with the aircraft, the question is confronted whether such limitations upon use are authorized by the statute—*i. e.* whether the regulation is valid.

Throughout the Act broad authority to promulgate regulations is conferred, but the Congress expressly directed that the formulation of regulations "shall be guided by the objectives of this Act." 58 Stat. 770, 50 U.S.C.A.Appendix, § 1622 (1944).

Included in the "Declaration of general objectives" of the Act are these: " * * * (b) to give maximum aid in the reestablishment of a peacetime economy of free independent private enterprise, the development of the maximum of independent operators in trade, industry, and agriculture, and to stimulate full employment; * * * (d) to discourage monopolistic practices and to strengthen and preserve the competitive position of small business concerns in an economy of free enterprise; * * (f) to afford returning veterans an opportunity to establish themselves as proprietors of * * * enterprises; * * (p) to foster the development of new independent enterprise; * * * [and] (s) to dispose of surplus Government-owned transportation facilities and equipment in such manner as to promote an adequate and economical national transportation system * * *." 58 Stat. 766, 50 U.S.C.A.Appendix, § 1611 (1944).

It is seen that the stated objectives of the Act are replete with references to "free independent private enterprise", "independent operators", "small business concerns", "afford[ing] returning veterans an opportunity * * * as proprietors", and "new * * * enterprise". Defendants Finn wanted to do these very things; their objective was to operate the airplane in suit themselves as a new and independent and free private enterprise.

█ The provision of subsection (2) of Regulation § 8304.11(b), prohibiting flight of the airplane "except for pur-

poses of research or experiment" runs directly counter to the Congressional objectives expressed in the statute. Being contrary to, rather than in accordance with, "the provisions * * * [and] objectives of this Act", the regulatory provision in question is invalid. Comparable provisions of Form 65 are *pari ratione* invalid as well.

Like considerations of reason and policy raise doubts also as to the validity of the limitations on disposal contained in above-quoted subsection (3) of the regulation, but it is not necessary to resolve them here. The three-year restriction on unfettered disposal having expired at the time of the sale to defendants Finn, the School District was free to sell the aircraft as such without violating the provisions of subsection (3) of the regulation. See United States v. School District No. 2, etc., D.C.E.D. Mich.1954, 124 F.Supp. 570.

The jury found that defendants Finn and Bancroft did not intend to induce a breach of the contract; neither did they induce one. The School District's agreement in Form 65, as read in the light of the quoted regulation, was not breached by sale of the airplane to defendants Finn.

There remains for determination the counterclaim of defendants Finn for loss of use from the time possession of the aircraft was seized at the suit of the Government on September 15, 1952, and for the full value of the airplane in the event the Government does not return it.

■ This counterclaim is compulsory in character, since "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.Rules Civ.Proc. Rule 13(a), 28 U.S.C.A. Accordingly, federal jurisdiction over the subject matter need not rest upon independent grounds, but may be grounded upon jurisdiction over the subject matter of the main suit. See: Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750; American Mills Co. v. American Surety Co., 1922, 260 U.S. 360, 364, 43 S.Ct. 149, 67 L.Ed. 306; Texas Co. v. Borne, etc., Co., 4 Cir., 1938, 68 F.2d 104, 106; Cooling Tower Co. v. C. F. Braun & Co., 9 Cir., 1924, 1 F.2d 178; Hartley Pen Co. v. Lindy Pen Co., D.C. S.D.Cal.1954, 16 F.R.D. 141.

■ Sovereign immunity, both as to liability and as to suit, cf. Hopkins v. Clemson Agricultural College, 1911, 221 U.S. 636, 646, 31 S.Ct. 654, 55 L.Ed. 890, has been impliedly waived by the act of the Government in bringing the action, thereby voluntarily submitting *pars pro toto* all controversies involved, including compulsory counterclaims, to the jurisdiction of this Court. [See: United States v. The Thekla, 1924, 266 U.S. 328, 339-341, 45 S.Ct. 112, 69 L.Ed. 313; The Siren, 1868, 7 Wall. 152, 74 U.S. 152, 19 L.Ed. 129; cf. 28 U.S.C. § 2406; United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

The guiding principle is stated for an unanimous Court by Mr. Justice Holmes in United States v. The Thekla, supra, 266 U.S. at pages 339-341, 45 S.Ct. at page 113: "When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. * * * the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest. * * * It joined in the suit, and that carried with it the acceptance of whatever liability the courts may decide to be reasonably incident to that act." See Pound, A Survey of Public Interests, 58 Harv.L.Rev. 909, 916-921 (1945).

Some decisions have limited the Thekla rule to actions of an *in rem* nature. United States v. U. S. Fidelity & Guaranty Co., 1940, 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894; United States v. Shaw, supra, 309 U.S. at page 502, 60 S.Ct. at page 662; United States v. Davidson, 5 Cir., 1943, 139 F.2d 908, 911; In re Flato, D.C.S.D.N.Y.1946, 68

F.Supp. 632, 638. If properly treated as so limited, the rule is nonetheless applicable at bar, for this action is in the nature of a proceeding *in rem;* the rights and liabilities of the parties concerning the airplane are here in issue. The claim of defendants Finn for loss of use of the airplane being but one part of the controversy, that claim must be resolved in order to achieve a full determination of the rights and liabilities of all the parties derived from the property—the *res*—in suit.

If not so limited, United States v. Moscow-Idaho Seed Co., 9 Cir., 1937, 92 F.2d 170, 173, 174; See Standard Oil Co. of California v. United States, 9 Cir., 1946, 153 F.2d 958, 960; But see United States v. Merchants Transfer & Storage Co., 9 Cir., 1944, 144 F.2d 324, 327, the Thekla rule is *a fortiori* applicable at bar. See: 28 U.S.C. §§ 2674, 2680; American Propeller & Mfg. Co. v. United States, 1937, 300 U.S. 475, 478, 57 S.Ct. 521, 81 L.Ed. 751; Yankwich, Problems Under the Federal Tort Claims Act, 1949, 9 F.R.D. 143; 3 Moore, Federal Practice 66, Pars. 13.26–13.28 (2d ed. 1948).

■■■■ Without regard to the Thekla rule, however, the Government's seizure of the airplane in suit was a taking of property for public use for which the Fifth Amendment assures "just compensation". U. S. Const. Amend. V. That a physical seizure or "taking" of the airplane occurred is clear; and where there has been such a taking, the owner is entitled to recover compensation. United States v. A Certain Tract or Parcel of Land, D.C.S.D.Ga.1942, 44 F.Supp. 712, 715. The form of taking is immaterial, and it need not be in pursuance of a condemnation proceeding, Campbell v. Chase Nat. Bank, D.C.S.D. N.Y.1933, 5 F.Supp. 156, 172; See Campbell v. United States, 1924, 266 U.S. 368, 370–371, 45 S.Ct. 115, 69 L.Ed. 328, for the power of eminent domain is an ever-present attribute of sovereignty and exists independently of the Constitution and statutes. United States v. A Certain Tract or Parcel of Land, supra, 44 F.Supp. at page 715; see James v. Dravo Contracting Co., 1937, 302 U.S. 134, 137, 58 S.Ct. 208, 82 L.Ed. 155.

■■■■ As said in United States v. General Motors Corp., 1945, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311, "Property * * * denote[s] the group of rights inhering in the citizen's relation to the physical thing, as the right to *possess, use* and *dispose* of it. * * * The constitutional provision is addressed to every sort of interest the citizen may possess." [Emphasis added.]

■■■■ The Government took possession of and prevented use or disposition of the airplane by others; thus, it has taken for the as-yet-undetermined period of detention the "group of rights" of which the "property" is comprised.

■■■■ It is for the courts to decide whether the use is in fact a public use, Shoemaker v. United States, 1893, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170, and the Supreme Court has just observed that "The concept of the public welfare is broad and inclusive." Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 102. Here it was a substantial benefit to the public to have the airplane under Government control pending adjudication of its claims. A judgment might be of little value if the airplane were not available for satisfaction. Cf. National Union Marine Cooks v. Arnold, 348 U.S. 37, 75 S.Ct. 92.

■■■■ It follows that "just compensation" must be provided for the loss of use. See Rank v. Krug, D.C.S.D.Cal. 1950, 90 F.Supp. 773, 786. "Such compensation means the full and perfect equivalent in money of the property taken." United States v. Miller, 1943, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336.

Under the circumstances here the constitutional requirement of "just compensation" is met by holding the Government liable, as would be a private citizen under the law of California, for all damages proximately resulting from wrongful seizure and detention of personal property. 28 U.S.C. § 2674; Cal.Code Civ.Proc. § 667; Nahhas v. Browning,

**168**

1919, 181 Cal. 55, 183 P. 442, 6 A.L.R. 476; Cf. 28 U.S.C. §§ 2674, 2680; United States v. Miller, supra, 317 U.S. at page 380, 63 S.Ct. at page 283.

 Defendants Finn have been wrongfully deprived of the possession and use of the airplane, the fair market value of the use of which in the condition in which found at the time of seizure on September 15, 1952 was and now is the sum of $15 per day.

The fair market value of the aircraft itself at the date of commencement of this action on July 3, 1952 has been found by the jury to be $50,000. Adopting this finding, the court will fix $50,-000 as the fair market value of the airplane at the time the Government seized possession on September 15, 1952.

 Judgment will be ordered in favor of all defendants dismissing the Government's complaint on the merits. Judgment also will be ordered in favor of defendants Finn on their counterclaim (1) requiring the Government to restore to them possession of the aircraft in suit, at Scotty's Air Strip in the State of Nevada, in the same order and condition as when the Government seized possession on September 15, 1952, ordinary wear and tear excepted; or (2) in the alternative, to pay to defendants Finn the sum of $50,000 as the fair market value of the airplane [see 28 U.S.C. § 2412]; and (3) in either event, to pay to defendants Finn the fair market rental value of $15 per day from September 15, 1952 until either the aircraft shall have been delivered into the possession of defendants Finn or their agents, successors or assigns, as provided in (1) above, or until the sum of $50,-000 shall have been paid, as provided in (2) above.

All adjudications in favor of defendants Finn will be made subject and without prejudice to any prior rights of defendant International Airports, Inc., which may now exist or be hereafter adjudicated in the State courts.

Defendants will lodge with the Clerk within ten days findings of fact, conclusions of law, and judgment accordingly, to be settled pursuant to local rule 7.

APPENDIX

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

GEORGE C. FINN, CHARLES C. FINN, INTERNATIONAL AIR-
PORTS, INC., PETER A. BANCROFT, VINELAND ELEMENTARY
SCHOOL DISTRICT OF KERN COUNTY, and SEABOARD SURE-
TY COMPANY, a corporation,

Defendants.

No. 14309–WM Civil

Special Verdict

[Fed.R.Civ.P. 49(a)]

We, the jury in the above entitled cause, unanimously find as follows:

| Interrogatory: | Finding of the Jury: |
|---|---|
| (1) At the time of the making of the agreement between Vineland Elementary School District and defendants Finn on February 28, 1951 [see Vineland's Exhibit B], did defendants Finn, or either of them, have either knowledge or notice that the plaintiff, United States of America, claimed restrictions upon the use or sale of the airplane in suit [see plaintiff's Exhibit 1]? | Yes <br> ["YES" or "NO"] |
| (2) Did defendant Vineland Elementary School District intend to transfer title to the airplane in suit to defendants Finn at any time before all necessary consents and releases and waivers of the Government had been procured? | No <br> ["YES" or "NO"] |
| (3) Did defendants Finn intend to induce defendant Vineland Elementary School District to breach any agreement between the Government and the School District [see plaintiff's Exhibit 1]? | No <br> ["YES" or "NO"] |
| (4) Did defendant Peter Bancroft intend to induce defendant Vineland Elementary School District to breach any agreement between the Government and the School District? | No <br> ["YES" or "NO"] |

(5) At what time or times during the period from February 28, 1951 until October 26, 1951 were defendants Finn, or either of them, in actual possession of the airplane in suit?

Oct. 23, 1951
[State date or dates]

(6) At what time or times during the period from February 28, 1951 until October 26, 1951 were defendants Finn, or either of them, in constructive possession of the airplane in suit?

Feb. 28, 1951 to

Oct. 23, 1951
[State date or dates]

(7) At the time when physical possession of the airplane in suit was given to defendants Finn, did defendant Peter Bancroft and defendant Vineland Elementary School District intend that such possession be for the sole purpose of enabling work to be done on the aircraft which could not be done on the school grounds?

Yes
["YES" or "NO"]

(8) At the time on August 31, 1951, when defendant International Airports, Inc. advanced $15,000 to defendants Finn, did International Airports, Inc. in good faith believe that defendants Finn were the true and lawful owners of the airplane in suit?

Yes
["YES" or "NO"]

(9) Did defendant International Airports, Inc. in good faith believe that defendants Finn were the true and lawful owners of the airplane in suit during the period after August 31, 1951, when International Airports, Inc. performed labor and furnished materials of the value of $10,200 for the repair and improvement of the aircraft?

Yes
["YES" or "NO"]

(10) Did defendant International Airports, Inc. have either knowledge or notice of the existence of interests and claims of defendant Vineland Elementary School District to the aircraft in suit under the agreement between the School District and defendants Finn [see Vineland's Exhibit B] at the time International Airports, Inc. advanced the sum of $15,000 to defendants Finn [see International's Exhibits B, C, E, F and G]?

Yes
["YES" or "NO"]

(11) Did defendant International Airports, Inc. have either knowledge or notice of the existence of interests and claims of defendant Vineland Elementary School District to the aircraft in suit under the agreement between the School District and defendants Finn, at the time International Airports, Inc. performed labor and furnished materials of the value of $10,200 for the repair and improvement of the aircraft?

Yes
["YES" or "NO"]

(12) Did defendant International Airports, Inc. have either knowledge or notice, on August 31, 1951, when International Airports, Inc. advanced $15,000 to defendants Finn, that the plaintiff, United States of America, claimed restrictions upon the use or sale of the airplane in suit [see defendant International's Exhibit A and plaintiff's Exhibit 1]?

Yes
["YES" or "NO"]

(13) Did defendant International Airports, Inc. have either knowledge or notice that the plaintiff, United States of America, claimed restrictions upon the use or sale of the airplane in suit at any time during the period after August 31, 1951, when International Airports, Inc. performed labor and furnished materials of the value of $10,200 for the repair and improvement of the aircraft?

Yes
["YES" or "NO"]

(14) Have Government restrictions as to sale and use of the airplane in suit ever been released by any authorized representative of the Federal Security Agency?

No
["YES" or "NO"]

(15) Have Government restrictions as to sale and use of the airplane in suit ever been waived by any authorized representative of the Federal Security Agency?

No
["YES" or "NO"]

(16) What was the fair market value, in cash, of the airplane in suit on July 25, 1946, at the time of delivery of the aircraft by the War Assets Administration to the Vineland Elementary School District [see plaintiff's Exhibit 4]?

$ 5,000.00

(17) What was the fair market value, in cash, of the airplane in suit on February 28, 1951, at the time of the making of the agreement between Vineland Elementary School District and defendants Finn [see Vineland's Exhibit B]? $20,000.00

(18) What was the fair market value, in cash, of the airplane in suit during the period February 28, 1951 to October 26, 1951? From $20,000 To $50,000 F. S.

$25,000

(19) What was the fair market value, in cash, of the airplane in suit on April 14, 1951, at the time of the delivery of the Bill of Sale from Vineland Elementary School District to defendants Finn [see plaintiff's Exhibit 5]? $25,000

(20) What was the fair market value, in cash, of the airplane in suit on July 3, 1952, at the time of the commencement of this action or suit by the United States of America as plaintiff against the defendants? $50,000

Los Angeles, California.
November 5th, 1954.

Frank F. Striker
Foreman of the Jury