SCHOOL DISTRICT 2 FRACTIONAL, ATHENS TOWNSHIP, CALHOUN COUNTY, MICHIGAN, and L. B. S. Aircraft Corporation, Appellants,

v.

UNITED STATES of America, Appellee.

No. 12423.

United States Court of Appeals Sixth Circuit.

Jan. 13, 1956.

Robert V. Smith, Washington, D. C., and Victor E. Bucknell, Vicksburg, Mich., Robert V. Smith, Washington, D. C., Charles R. Moon, Detroit, Mich., on the brief), for appellants.

Richard M. Marcus, Washington, D. C. (Geo. S. Leonard, Melvin Richter and Fred W. Kaess, Detroit, Mich., on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal by a Michigan township school district and an aircraft corporation from a judgment rendered against them in the amount of $10,000, in favor of the United States Government. D.C.E.D.Mich., 124 F.Supp. 570.

On June 26, 1947, appellant school district paid the War Assets Administration the sum of $200, and in return received a sales document and transfer of an airplane, which it thereafter used for nonflight instructional purposes. More than four years after it received the plane from the government, the school district sold it to appellant aircraft corporation for the sum of $7,120.

Subsequent to the sale of the plane by the school district to the aircraft corporation, the government brought suit, claiming that the right of the school district to sell the plane was limited by the terms of certain contract provisions agreed to by the school district at the time of its purchase from the government; that, by virtue of such contract provisions, the government had retained

an interest in the plane; that its sale and transfer to the aircraft corporation were in violation of the contract provisions under which the plane was transferred to the school district; that the government, by the provisions of such contract, was entitled to damages in the amount of the value of the plane at the time of its sale by the school district to the aircraft corporation, which was agreed to be $10,000.

Appellants insist that the school district made an outright purchase of the plane from the government; that, according to the regulations of the War Assets Administration governing the sale in this case, the aircraft could be resold by the school district any time after three years subsequent to the date of its purchase from the government; that the government reserved no right in the aircraft sold to the school district; and that any restrictions in the instruments of sale prohibiting the resale in question of the aircraft were invalid as being in violation of the regulations governing the sale and resale of surplus property. Accordingly, appellants claim that they are neither in any way indebted to the government nor subject to any claim for damages.

The government, in establishing its case, relied upon the provisions of the Surplus Property Act, 50 U.S.C.A.Appendix, § 1611 et seq., and the provisions of the sales agreement between the school district and the government, including, principally, a document known as Form 65, signed by the school district in submitting its offer to the government.

The Surplus Property Act, insofar as here relevant, provided that the Board— originally the Surplus Property Board, but later, the War Assets Administration—should prescribe regulations to effectuate the provisions of the Act, and that, in formulating such regulations, it should be guided by the objectives of the statute; and that regulations issued pursuant to the above mentioned conditions might, except as otherwise provided in the Act, "contain provisions prescribing the extent to which, the times at which,

the areas in which, * * * and the terms and conditions under which, surplus property may be disposed of * * *."

The disposition of surplus property to educational institutions such as appellant school district was governed by Section 13 of the Act, which provides that in formulating regulations for the disposition of surplus property "to States and their political subdivisions and instrumentalities, and to tax-supported and nonprofit institutions," the Board should give effect to the following policies to the extent feasible and in the public interest:

"(1) (A) Surplus property that is appropriate for school, classroom, or other educational use may be sold or leased to the States and their political subdivisions and instrumentalities, and tax-supported educational institutions, and to other non-profit educational institutions which have been held exempt from taxation under section 101(6) of the Internal Revenue Code.

*   *   *   *   *

"(C) In fixing the sale or lease value of property to be disposed of * * *, the Board shall take into consideration any benefit which has accrued or may accrue to the United States from the use of such property * * *."

Section 15 of the Act provided:

"(a) Notwithstanding the provisions of any other law but subject to the provisions of this Act, whenever any Government agency is authorized to dispose of property under this Act, then the agency may dispose of such property by sale, exchange, lease, or transfer, for cash, credit, or other property, with or without warranty, and upon such other terms and conditions, as the agency deems proper *   *   *.

"(b) Any owning agency or disposal agency may execute such documents for the transfer of title or other interest in property or take such other action as it deems neces-

sary or proper to transfer or dispose of property or otherwise to carry out the provisions of this Act, and, in the case of surplus property, shall do so to the extent required by the regulations of the Board."

Pursuant to the Surplus Property Act, the War Assets Administration issued Regulation No. 4, 32 C.F.R., Supp.1946, Sections 8304.1 et seq., governing the disposal of aircraft, components and parts of aircraft, which, insofar as here applicable, provided:

"The disposal agency shall establish procedures pursuant to which educational * * * institutions or instrumentalities may make written application for surplus aeronautical property available for disposal to such institutions or instrumentalities. Such procedures shall include (1) a certification that the applicant is an educational * * * institution or instrumentality as defined in Section 8304.1, (2) a certification of the purposes for which the property is to be acquired, and in the case of aircraft an agreement that it will not be flown except for purposes of research or experiment in connection with the science of aeronautics, and (3) an agreement that the property will not be resold to others within three (3) years of the date of purchase without the consent in writing of the disposal agency unless it is mutilated or otherwise rendered unfit for use except as scrap." [Section 8304.11(b).][1]

From the foregoing regulations, it is seen that one of the procedures required to be established by the government agency disposing of surplus property is a condition that the institution, such as the school district in this case, must, in its written application to secure such property, agree "that the property will not be resold to others within three (3) years of the date of purchase without

the consent in writing of the disposal agency," unless it is rendered unfit for use except as scrap. It is upon this provision that appellants rely, for they claim that, as the resale by the school district occurred more than three years after the date of purchase from the government, such resale was, therefore, permissible under the regulations.

The district court, in its opinion holding that the sale was in violation of the regulations and conditions of the instrument of sale between the school district and the government, stated that a reading of the above portion of the regulations, standing alone, by implication supported the argument of appellants, but that a fair construction of the contract between the school district and the government, together with Section 13 of the Surplus Property Act, showed that it was the intention of the parties that the plane be used for instructional purposes until it was no longer fit for such use, and that it might then only be sold as scrap. This requires an examination of the contract between the school district and the government by which the former secured the plane, as well as a consideration of the section of the statute which, the district court held, was controlling in the light of the contract provisions above mentioned.

The nature of the interest in the airplane acquired by the school district is of importance in view of the arguments advanced by the government. The transaction in which the school district secured the airplane from the government, as mentioned above, included an application entitled "War Assets Administration Form 65," and designated "Agreement," in which, "In consideration of the transfer of certain items of Aeronautical Property under provisions of Surplus Property Act of 1944, Public Law 457," the school district "hereby certifies and agrees" that the property to be acquired was for the sole use of instruction, and,

---

1. Sections 1(b) (3) and 1(b) (4) distinguished between salvage, which had serviceable components, and scrap, which had value only for its basic material content.

among other stipulations, it was provided "That all acquired property when unfit for the above purpose will be sold only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content." It was further provided that "this Agreement shall be effective for all future transfers of Aeronautical Property under the provisions of Surplus Property Administration Regulation No. 4, as amended from time to time."

It appears that this Form 65 application or agreement had been formulated and adopted by the War Assets Administration as part of its standard procedure, and was required to be executed by educational institutions which were desirous of obtaining surplus aeronautical property for purposes of instruction; and such form was executed in this case by the proper officer of the school district.

Upon the execution of Form 65 by the school district and its submission to the War Assets Administration, the latter executed and delivered to the school district an instrument entitled "Sales Document, War Assets Administration," reciting that the airplane in question was "sold" to the school district for $200 by "Salesman" Lewis with "Sale Date 6/11/47." The printed document set forth that it was a "Buyer's Copy." It appears that the airplane in question was a two engine land plane suitable for passenger and freight transportation.

We are of the opinion that the transaction between the school district and the government constituted a sale in which the government transferred complete title to the school district. As said in an extremely able and well reasoned opinion by Judge Mathes, passing upon a similar question in United States v. Finn, D.C.S.D.Cal., 127 F.Supp. 158, 163:

"The authority of the War Assets Administration to pass title is made clear by the * * * provisions of the statute that: 'Surplus property * * * appropriate for school, classroom, or other educa-

tional use may be sold or leased * * *.' 58 Stat. 771, 50 U.S.C.A. Appendix, § 1622(a) (1) (A) (1944).

"But most important, at the time the airplane was delivered to defendant School District, a sale was the only permissible method of disposal; for the regulation then provided: '(A)fter June 30, 1946, transport aircraft shall be disposed of only by sale.' 32 C.F.R. 1946 Supp. § 8304.-7. Interpreted in the light of the statute and the regulation, the documentary evidence compels the conclusion that in 1946 full title to the airplane in suit was transferred by the War Assets Administration to Vineland Elementary School District."

The government contends that the sale of the aircraft by the school district to the aircraft corporation was in violation of the provision in Form 65 that "all acquired property when unfit for the above purpose (of instruction) will be sold only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content."

Assuming that the sale of the airplane by the school district to the aircraft corporation after three years from the date of its purchase by the school district was in violation of the conditions set forth in Form 65, appellants contend that the provisions of Form 65 are contradictory to and inconsistent with the regulations of the War Assets Administration governing the sale of such surplus property, and that the regulations, being mandatory and having the force and effect of law, must here control.

It appears that the conditions imposed in Form 65 are different from those imposed by the regulation. In the regulation, the purchaser of surplus property is required to agree that it will not be resold to others within three years of the date of purchase without the consent of the agency, unless it is rendered unfit for use except as scrap; in the Form

65 agreement, the agency requires the buyer to agree that all surplus property purchased, when unfit for instructional purposes, will be sold only after it has been rendered completely unfit for use except as scrap.[2] In brief, the regulation permits the resale, as in this case, of the surplus property for salvage after three years from the date of purchase, while the Form 65 agreement prohibits such resale.

The government, however, argues that even though the regulation directed that the agreements to be entered into between the government and purchasers of surplus property permit the resale of the surplus property, as in this case, it was within the power of the War Assets Administration to impose other and different conditions—such as embodied in the Form 65 agreement—prohibiting such a resale; and it is claimed that the provision required by the agency to be inserted into every contract prohibiting such a resale is not in conflict with a mandatory regulation directing the inclusion of a provision in the contract permitting such a resale. It is argued by the government that the regulation did not in any sense limit the right of the disposal agency to obtain more favorable terms on behalf of the government. Whatever might be advanced along this line—and we fail to see that Form 65 could be said to obtain more favorable terms for the government than if resale, after three years, had been permitted by such contract—it is to be said that the regulation did limit the agency in the sense that it could not act in conflict with the regulation. In this regard, an interesting fact emerges, in our consideration of the regulation, which greatly weakens the contention of the government. For it appears that the real reason why the agency required the school district to execute the Form 65 agreement was not because the agency was intent on obtaining terms more favorable to the government than specifically provided by the regulation, but because the agency was proceeding under an old superseded regulation which contained the terminology that had been inserted in the Form 65 agreement. The former regulation[3] provided exactly what the Form

---

2. Resales of property, in any form, within three years of the date of purchase, require the consent of the disposal agency under both the regulation and Form 65, but such provisions are inapplicable to the present case inasmuch as the resale was made more than four years after purchase from the government.

3. The successive regulations, here pertinent, which were in effect prior to the transaction between the school district and the government in the instant case, were issued two years before the sale of the plane to the school district.

Section 8304.4(c) of the Surplus Property Administrator's Regulation No. 4, issued May 4, 1945 (10 F.R. 5460), provided, in part, as follows:

"The Buyer shall file with the Disposal Agency a certificate under oath, duly notarized that such Buyer is an educational institution, as defined in Section 8304.1(e), that the property is being acquired to be used only for non-flight instructional, research or experimental purposes, that it will not be used for any flight purposes, *and that the property will be disposed of only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content.*" (Emphasis supplied.)

Section 8304.4(c) of the Surplus Property Administrator's Regulation No. 4, issued August 10, 1945 (10 F.R. 10362) provides in part as follows:

"The Buyer shall file with the Disposal Agency a certificate under oath, duly notarized that such Buyer is an educational institution, as defined in Section 8304.1(e), or a State or local Government as defined in Section 8304.1(i), that the property is being acquired to be used only for non-flight instructional, research, experimental or memorial purposes, that it will not be used for any flight purposes, *and that the property will be disposed of only as scrap and then only after it shall have been rendered completely unfit and useless except for its basic material content.*" (Emphasis supplied.)

Some months after the issuance of the above regulation, a new regulation was substituted in lieu thereof, in which it was provided that in the procedure for disposal of surplus aeronautical property, the agency should include a provi-

65 agreement provided—that surplus property could not be resold unless it had been rendered unfit for use except as scrap; and that regulation had been superseded by Section 8304.11(b) of the War Assets Regulations which was in effect at the time of the transaction in this case, and which permitted the sale of such surplus property after three years from the date of purchase without any restriction that it be rendered unfit for use except as scrap.

The War Assets Administration claims to find the authority or the power to impose conditions in a contract prohibiting such a resale in the provisions of the Surplus Property Act, particularly in those sections declaring the objectives of the Act and granting the War Assets Administration broad powers to prescribe regulations to effect the provisions of the Act.

But the provisions as to disposal of surplus property in the regulations, and the restrictions set forth in the executed Form 65 are contradictory and cannot stand together. In spite of the government's copious argument, this seems obvious. The two provisions, as they would appear together in either a contract or a regulation, would be as follows:

(1) The surplus property may be sold to others after three years from the date of purchase.

(2) The surplus property may not be sold to others after three years from the date of purchase, but can be sold only after it becomes unfit for purposes of instruction, and then only after it has been rendered completely unfit for any purpose except as scrap.

From the above, it follows that the provisions in the regulation and the restrictions in Form 65 are in conflict.

■ The language of the regulation being mandatory, and having the force of law to the extent authorized by the statute, must control. This requires that the regulation must be read into the Form 65 agreement in lieu of that portion which was executed by the school district. The result follows that, as to this provision, the school district and the government must be held to have agreed only that the surplus property would not be sold to others within three years of the date of purchase. The provision in Form 65, in which the school district was required to agree that the surplus property would not be resold, except when unfit for any purpose except scrap, is, accordingly, invalid and cannot stand.

■ "This holding is buttressed by the settled rule that a valid administrative regulation binds the administrator himself equally with others, United States ex rel. Accardi v. Shaughnessy, supra, 347 U.S. 260, 74 S.Ct. 499 [98 L. Ed. 681]; Chapman v. Sheridan-Wyoming Co., 1950, 338 U.S. 621, 629, 70 S. Ct. 392, 94 L.Ed. 393; Bridges v. Wixon, 1945, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; See Jeffries v. Olesen, D.C.S.D.Cal.1954, 121 F.Supp. 463, 476, the same as though the provisions of the regulation were prescribed in terms by the statute. Atchison, T. & S. F. Ry. Co. v. Scarlett, 1937, 300 U.S. 471, 474, 57 S.Ct. 541, 81 L.Ed. 748." United States v. Finn, D.C.S.D.Cal., 127 F.Supp. 158, 165.

■ As to the contentions of the government that it retained title to the plane or an interest therein sufficient to enable it to maintain a claim for damages because of the violation by the school district of restrictions upon its disposal, it appears that "Form 65 con-

sion, in effect, permitting a resale of the surplus property after three years from the date of its purchase. Section 8304.-11(b) of the Surplus Property Administrator's Regulation No. 4, issued December 21, 1945 (11 F.R. 179). It was this provision that was included in the subsequent regulation which was in effect at the time the school district filed its ap-

plication to secure the plane here in question, Section 8304.11(b) of the War Assets Administrator's Regulation No. 4, issued May 21, 1946 (11 F.R. 5868); and there were no subsequent amendments to this regulation that have any bearing on the issue here. See 32 C.F.R., Section 8304.11(b) (3).

tains no reservation of power in the Government to revest title to the property, nor any provision that title will automatically revest on violation of the restrictions. Moreover restrictions upon title which restrain alienation and use are not favored by the law. See: Davis v. Gray, 1872, 16 Wall. 203, 230, 83 U. S. 203, 230, 21 L.Ed. 447; Los Angeles University v. Swarth, 9 Cir., 1901, 107 F. 798, 803, 54 L.R.A. 262. So where, as here, there are 'no express terms creating a condition, no clause of re-entry nor words of any sort indicating such purpose, the conclusion is unavoidable that the obligation in question is a covenant * * *.' Columbia Railway, etc., Co. v. South Carolina, 1923, 261 U.S. 236, 248, 250, 43 S.Ct. 306, 310, 67 L.Ed. 629, for the breach of which damages would be the only remedy. See: United States v. Michigan, 1903, 190 U.S. 379, 23 S. Ct. 742, 47 L.Ed. 1103; Northern Pacific Railway v. Townsend, 1903, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044; American Emigrant Co. v. County of Adams, 1870, 100 U.S. 61, 71, 25 L.Ed. 563." United States v. Finn, D.C.S.D.Cal., 127 F. Supp. 158, 163.

From the above, it appears that the restrictions upon sale and disposal of the plane inserted by the government agency in its instrument of sale to the school district were contrary to the regulations of the War Assets Administration governing such sales and are, therefore, invalid; that the government had neither a valid title nor right of possession to the airplane in suit after its transfer to the school district; that the school district had complete title to the plane at the time it sold it to appellant aircraft corporation; and that the government has no valid claim for damages against either of the appellants.

Other contentions advanced in the briefs and on the argument of the case, we consider without merit, in the light of the above conclusions.

In consideration of the foregoing, the judgment of the district court is reversed and the complaint of the government is dismissed.