**UNITED STATES ex rel. Anthony J. CAPUTO, Jr.**

v.

**G. F. SHARP, Capt., U.S.N. Commanding Officer, U. S. Naval Station Brig, Philadelphia, Pa.**

**Misc. No. M–3799.**

United States District Court
E. D. Pennsylvania.
July 12, 1968.

See also D.C., 282 F.Supp. 362.

John Roger Carroll, Philadelphia, Pa., for petitioner.

Drew J. T. O'Keefe, U. S. Atty., James C. Lightfoot, Merna B. Marshall, Asst. U. S. Attys., Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION

WEINER, District Judge.

Relator on this petition for a writ of habeas corpus contends that he was unlawfully inducted into the United States Marine Corps by his local board of the Selective Service System. Because we find that relator's induction was invalid, contravening as it did a regulation of the Selective Service System itself and thereby depriving relator of his liberty without the due process of law guaranteed him by the Fifth Amendment, we shall grant the writ for the reasons discussed below.

A preliminary summary of the facts will be helpful. Relator originally enlisted in the Marine Corps Reserve Program on June 7, 1965. He served his six-month period of active duty, and became a member of the Ready Reserves on December 7, 1965. Between June 7, 1966 and February 9, 1967, he apparently missed 32 of the 60 drills he was required to attend. A Ready Reservist in his position was at that time permitted only four unexcused absences out of the 48 annual drills. On February 9, 1967, relator's Reserve unit certified him for priority induction to his local board on the ground of unsatisfactory service. On March 16, 1967, the local board ordered relator to report for induction. On March 23, 1967, the board had relator examined and found him to be IV–F. On August 22, 1967, relator was given a general discharge, and the following day was purportedly inducted into the regular Marine Corps.

There seems little question that relator was delinquent in his attendance at required drills. His Reserve unit had two alternatives available to it at that time as a consequent remedy. It could either have ordered relator "without his consent to perform additional active duty for training for not more than 45 days,"

under 10 U.S.C. § 270(b) (1964), or it could have discharged him from the Reserves in order that his local board call him up for priority induction in a coordinated move. Either pattern was customary at the time; as recited above, it was the latter one to which the unit and the local board resorted.

The fatal defect in this procedure in the instant case stems from relator's medical condition. His local board classified him IV–F on March 23, 1967, and he remained so classified on August 23, 1967, the date of his purported induction. The regulations promulgated under 50 U.S.C.App. §§ 460(b) (7), (c) (1964) defining Class IV–F are in pertinent part as follows:

In Class IV–F shall be placed any registrant who is found under applicable physical, mental, and moral standards to be not qualified for any service in the Armed Forces either currently or in time of war or national emergency declared by the Congress.

32 C.F.R. § 1622.44(a) (1967).

■ The proscription against military service for those classified IV–F appears both mandatory and absolute. The regulations of the Selective Service System promulgated under the Universal Military Training and Service Act of 1948, have, like all properly authorized administrative rules and regulations, the force and effect of law, see, e. g., Farmer v. Philadelphia Electric Co., 329 F.2d 3, 7 (3d Cir. 1964); United States v. Barnard, 255 F.2d 583, 589 (10th Cir.), cert. denied, 358 U.S. 919, 79 S.Ct. 287, 3 L.Ed.2d 238 (1958). By the same token, it is axiomatic that "a valid administrative regulation binds the administrator himself equally with others," School District 2 Fractional v. United States, 229 F.2d 681, 686 (6th Cir. 1956), quoting United States v. Finn, 127 F.Supp. 158, 165 (S.D.Cal.1954) (Mathes, J.), aff'd as modified, 239 F.2d 679 (9th Cir. 1956).

■ The Government, however, counters the classification of relator as

IV–F with the argument that this action of his local board was unauthorized. It is true, as the Government contends, that priority induction is covered by 32 C.F.R. § 1621.8 (1967),[1] which reads, in pertinent part:

(a) Notwithstanding any other provision of the regulations in this chapter, any registrant enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * and deferred [as relator had been while a reservist] * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * shall be ordered to report for induction by the local board *regardless of the class in which he is classified and without changing his classification.* [emphasis supplied].

In the context in which this regulation applies, however, § 1621.8(a) could reasonably refer only to the Class I–C, in which is placed "[e]very registrant who is a member of a reserve component of the armed forces * * *" 32 C.F.R. § 1622.12(d) such as was relator here, from which § 1621.8(a) makes it unnecessary to transfer registrant into Class I–A before induction. This appears simply to obviate excess bureaucratic reclassification, removing one step in the process of inducting medically fit delinquent reservists.

Section 1631.8(a) cannot be reasonably said to permit even the priority induction of those properly classified as IV–F, or "not qualified for any service * * * either currently or in time of war or national emergency." It is understandable that the regulation focused upon priority induction of delinquent reservists would not have contemplated classes of registrants who are otherwise ineligible for active service, as reservists do not ordinarily fall within these groups. To interpret § 1631.8(a), however, to include a reservist found to be IV–F would not only be contrary to the terms of § 1622.44(a), but would also deprive relator of his constitutional right to due process of law by refusing him a " 'fair and just' compliance with the provisions of the Act and the applicable regulations," United States v. Zasadni, 206 F.Supp. 318, 321 (W.D.Pa.1962).

In accordance with the stipulation into which counsel entered on April 16, 1968 (document no. 6), we appointed an independent physician, Dr. Samuel Bellet, who examined relator in accordance with the appropriate Marine Corps standards communicated to him. Dr. Bellet diagnosed relator as having paroxysmal hypertension, and submitted that, in his opinion, relator "is not eligible for acceptance for full military duty" (document no. 7). This certainly seems to affirm the "basis in fact" required as sine qua non for the local board's jurisdiction to withstand judicial scrutiny,

1. Relator points out that a statutory change in procedure as of June 30, 1967 appears to allow for direct transfer of Ready Reservists in a position such as relator's here, without the intermediate step of discharge before priority induction. 50 U.S.C.App. § 456(c) (2) (D) reads in pertinent part: "Notwithstanding any other provision of this Act, the President, under such rules and regulations as he may prescribe, may provide that any person enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * may be selected for training and service and inducted into the armed force of which such reserve component is a part, prior to the selection and induction of other persons liable therefor."

Besides the fact that this language does not preclude resort to the former procedure of discharge followed by induction, the President, in Executive Order 11360, amended 32 C.F.R. § 1631.8 (1967) only by way of adding subsection (c) bearing no relevance to Ready Reservists of unsatisfactory service, 3 C.F.R. 304–05 (1967). Except for the prior classification of relator as IV–F, therefore, his local board did have the power to subject him to priority induction, regardless of his discharge and the statutory change in procedure.

see, Military Selective Service Act of 1967, § 1(8) (c), 50 U.S.C.App. § 460(b) (3) (1967); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

■ One final word is in order as to the jurisdiction of this court to grant the writ of habeas corpus in the instant situation. Some statutory language in § 1(8) (c) of the new Military Selective Service Act of 1967 seems to have caused some unnecessary consternation. The pertinent portion reads as follows:

> No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * *.

50 U.S.C.App. § 460(b) (3) (1967). The absence of any mention of a registrant's remedy through the writ of habeas corpus has caused some to fear a Congressional attempt to do away with jurisdiction to entertain the writ in the case of registrants for military service.

Such an attempt, of course, would raise serious constitutional questions, see U.S.Const. art. I, sec. 9, cl. 2; Estep, supra at 125, 132 (Murphy & Rutledge, JJ., concurring separately); H. Hart & H. Wechsler, Federal Courts and the Federal System 317–19, 323–25, 336–39 (1953). But more important is the fact that, despite the awkward phraseology of the statute, such an attempt does not appear to have been the goal of Congress.

Close reading reveals that the statute addresses itself solely to judicial review of the civilian Selective Service phase prior to induction. This legislative intent is borne out by the House Armed Services Committee Report, which evinces as its principal concern that of discouraging judicial review at a premature stage of the Selective Service process before the case would be properly ripe for challenge in the courts.[2]

Thus, the new law seems merely a statutory restatement of the "existing law" handed down by the federal courts which, indeed, "precludes * * * judicial review" of draft board "classification action" except in two instances, viz.: after registrant has submitted for induction, on a petition for habeas corpus; or, after registrant has refused induction, "as a defense to prosecution for failure to submit to induction into the armed forces," Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 394, 99 L.Ed. 428 (1955); accord, Brown v. McNamara, 263 F.Supp. 686, 690 (D.N.J.), aff'd, 387 F.2d 150 (3d Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968); Moskowitz v. Kindt, 273 F.Supp. 646, 648 (E.D.Pa.1967), aff'd, 294 F.2d 648 (3d Cir. 1968). But see Wolff v. Local Board No. 16, 372 F.2d 817, 825–826 (2d Cir. 1967).

In light of the above analysis of our view of a proper reading of the Selective Service regulations governing relator's

---

**2.** H.R.Rep. No. 267, 90th Cong., 1st Sess., U.S.Code Cong. & Adm.News, pp. 1308, 1333 (1967) reads as follows: "The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System."

case and of the jurisdiction of this court to entertain a petition for a writ of habeas corpus, we shall grant the writ.

It is so ordered.